THE STATE OF OHIO, APPELLEE, *v.* CLARK, APPELLANT.

[Cite as State *v.* Clark (1988), 38 Ohio St. 3d 252.]

(No. 87-327—Submitted May 4, 1988—Decided August 24, 1988.)

*Anthony G. Pizza,* prosecuting attorney, *James D. Bates* and *Michael A. Bruno,* for appellee.

*Thomas P. Kurt,* for appellant.

*Per Curiam.* As in all death penalty cases brought before this court, we are required to undertake a three-prong analysis. First, we will consider the specific issues raised by the appellant with regard to the proceedings below. Second, we must independently weigh the aggravating circumstance in this case against any factors which mitigate against the imposition of the death sentence. Third, we must independently consider whether appellant's sentence is disproportionate to the penalty imposed in similar cases.

In his first proposition of law, appellant argues that under R.C. 2929.04 (B), the state may not introduce evidence of a capital defendant's prior criminal convictions in the mitigation hearing unless the defendant has placed in issue his lack of a criminal record. Appellant submits that to allow the state to bring in such evidence on its own initiative is tantamount to allowing a non-statutory aggravating circumstance to go to the jury in contravention to this court's decision in *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061.

At the mitigation hearing, it was brought out that appellant had a prior felony record consisting of two robbery convictions, as well as convictions for grand theft, breaking and entering, and escape. Appellant's character witnesses at the mitigation hearing were cross-examined with respect to appellant's record, and after the trial court ruled extrinsic evidence of the convictions admissible, the parties stipulated to appellant's prior record.

R.C. 2929.03(D)(1) places the burden of going forward with evidence of mitigating factors on the defense. R.C. 2929.04(B) provides in relevant part:

"[T]he court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following [mitigating] factors * * *."

Since the statute makes the consideration of history, character and background evidence of the offender mandatory, the state contends that such evidence of history and background (*i.e.*, prior record) is admissible regardless of whether appellant places his history, character or background in issue.

In our view, if the appellant in fact carries his burden of going forward with evidence of mitigating factors, he opens the door for the state to introduce rebuttal evidence. In the instant cause, while appellant did not attempt to prove the lack of a significant prior ciminal record, he did introduce evidence of his history, character and background through the testimony of his mother and Dr. Hy P. Kisin.[1] The testimony of appellant's mother and daughter, Cheryl Stallworth, portrayed appellant as a good father and a quiet, Bible-reading man who lived with his mother. Dr. Kisin's testimony tended to portray appellant as a person with a potential for rehabilitation, and suggested that if appellant were ever released from prison, he would not be dangerous.

We believe that the evidence proffered by appellant in mitigation was in fact evidence of his history, character and background. The evidence submitted by the state in rebuttal was relevant to impeach, for example, Dr. Kisin's opinion of appellant's potential for rehabilitation. The prior criminal

---

[1] Appellant's mother, Mrs. Erma Clark, testified that before appellant started school "he used to go with me everywhere I go" and that she sent appellant to Sunday school. She testified that appellant was involved in sports during his school years, that he had a quiet personality and few playmates, but got along well with the playmates he had. She testified that appellant looked up to his father, who provided him with discipline while "I was always softhearted," and that appellant lost his father at age fifteen.

Mrs. Clark's testimony then moved to the year before appellant's arrest. She stated that appellant lived with her, that he read the Bible, and that he had a Bible tattooed on his arm.

Dr. Hy P. Kisin, a psychologist, testified with respect to his discussions with appellant. He gave an opinion that the death of appellant's father left appellant "without significant control." He testified that, during the year preceding the arrest, appellant "was doing some work at the place called Douglas Center" in order to earn welfare benefits. Upon being asked whether appellant could be rehabilitated so as to be able to function in prison, the doctor said that appellant could be rehabilitated to that extent. He testified that people typically become less violent and are less likely to commit crimes as they get older.

record of appellant was relevant to rebut the portrayal of appellant as a quiet, religious man and good father. Likewise, the rebuttal evidence of appellant's prior criminal record was relevant in this context because it completed an otherwise incomplete account of appellant's history and background. Since appellant essentially raised the issue of his history, character and background, he "opened the door" to all evidence relevant thereto. See Evid. R. 405(B). Since such evidence was offered in order to refute appellant's mitigation evidence, we hold that the introduction of appellant's prior criminal record here was relevant and admissible for this purpose. Therefore, we affirm the court of appeals on this issue.

In his second proposition of law, appellant contends that the trial court erred in not instructing the jury on the lesser included offense of involuntary manslaughter. Appellant argues that a reasonable jury could have entertained a reasonable doubt as to the element of purpose under the evidence submitted in this case.

In his taped confession to the police, appellant neither admitted nor denied his intent to kill the victim. He did state, however, that the victim "tried to force his way on me," and "tried to grab me." Appellant submits that a reasonable jury could have believed this scenario, and could have concluded that the appellant pulled the trigger accidentally out of surprise at the victim's reaction; or that he fired the revolver to wound the victim; or that he fired in order to frighten the victim. In support of these theories, appellant suggests that the victim was a belligerent person who would likely fight an armed robber.

This court has held that an instruction on a lesser included offense should only be given where the evidence warrants such an instruction. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, certiorari denied (1985), 472 U.S. 1032; *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 12, 514 N.E. 2d 407, 418; *State* v. *Johnson* (1988), 36 Ohio St. 3d 224, 226, 522 N.E. 2d 1082, 1084. An offense is deemed to be a lesser included offense of another if it is of a lesser degree than the other; if the greater offense cannot be committed without the lesser offense being committed; and where the greater offense requires proof of an element that is not an element of the lesser offense. *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303; *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 513 N.E. 2d 311. Even if commission of the greater offense necessarily entails commission of the lesser, the lesser offense is included only if, under the facts of the case, the trier of fact could reasonably find against the state and for the accused upon one or more elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense. *Wilkins, supra; Kidder, supra.* Involuntary manslaughter may, if the facts warrant, be a lesser included offense of murder. See *State* v. *Johnson* (1983), 6 Ohio St. 3d 420, 6 OBR 466, 453 N.E. 2d 595. Since murder and aggravated murder differ only by the additional elements required to prove aggravated murder, cf. R.C. 2903.01(B) and 2903.02(A), involuntary manslaughter can also, under the proper facts, be a lesser included offense of aggravated murder. Thus, in the cause *sub judice,* the element of purpose is the key inquiry in determining whether the trial court was correct in not giving the jury an instruction on involuntary manslaughter.

A review of the state's evidence submitted at trial to prove the element of purpose was that the appellant used a drawn, loaded revolver in the robbery and shot the victim in the chest with it. On prior occasions, we have held that the use of an "inherently dangerous instrumentality" in a robbery evinces an intent to kill because "homicide * * * is a natural and probable consequence thereof." *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 39, 10 O.O. 3d 78, 81, 381 N.E. 2d 637, 640; *State* v. *Clark* (1978), 55 Ohio St. 2d 257, 9 O.O. 3d 379, 378 N.E. 2d 597.

The testimony offered at trial indicates that the victim and appellant were on different sides of the service counter during the robbery. Before entering the service station, appellant had walked past it, then doubled back behind it, leaving footprints in the snow. When Toledo police officer Alfred Sigura responded to the silent alarm, he saw wet footprints in the service area of the station leading from the door to a soft drink cooler to the right and from there up to the counter, which was to the left of the door. He stated that he found no other (nonpolice) footprints in the service station. The victim's body was found behind the service counter.

Since Sigura arrived at the service station within thirty seconds after receiving the alarm, the logical inference would be that the wet footprints were appellant's. Since appellant left no footprints on the victim's side of the counter, it is reasonable to assume that he was not ever there. Thus, although the record does not specifically establish that the victim and appellant were separated by the service counter, the testimony indicates that they were.

In applying the pertinent precedents to the facts *sub judice,* we do not believe that a jury instruction on the lesser included offense was warranted. Appellant's theory that he intended to merely frighten the victim is patently unreasonable. If appellant wanted only to frighten the victim, he clearly would not have fired the gun at the victim's chest. Similarly, we believe that appellant's theory that he shot to wound the victim is also unreasonable. Although defense counsel argued before the jury that the shot might have been aimed at the victim's shoulder, the bullet was moving from the victim's right to his left, indicating that the shot was aimed away from the victim's right shoulder. On balance, however, because the wound was located in a vital area of the victim's body, we are unpersuaded that appellant's theory of shooting to wound is worthy of any merit under the evidence. In addition, we reject appellant's theory that the victim's movement surprised appellant into firing the revolver unintentionally. A careful review of the surrounding circumstances involved herein indicates that appellant waited to confront the victim while he was alone in the service station, as evidenced by the footprints in the snow. The evidence also shows that appellant participated in the commission of a robbery, and employed a deadly weapon to accomplish this crime. Even assuming appellant's account that the victim tried to grab him, the evidence and testimony indicate a voluntary, purposeful act to kill the victim, not an unintentional shooting brought about by surprise. Accordingly, we affirm the trial court's refusal to instruct the jury on involuntary manslaughter.

Appellant's third, fourth and fifth propositions of law are related.

In his third proposition of law, appellant argues that the court of appeals below did not comply with App. R. 12 (A), in that it incorrectly stated and decided the issue presented (that is

before this court in the fourth proposition of law discussed *infra*); and that a remand to the appellate court is necessary under this court's decision in *Danner* v. *Medical Center Hospital* (1983), 8 Ohio St. 3d 19, 8 OBR 167, 456 N.E. 2d 503.

In his fourth proposition of law, appellant contends that the trial court should not have ruled on the jury's request to rehear his taped confession outside the presence of himself or his counsel.

In the fifth proposition of law, appellant argues that a tape recording placed in evidence may not be replayed for the jury during its deliberations. In support of this argument, appellant cites the case of *State* v. *Ross* (App. 1973), 85 N.M. 176, 510 P. 2d 109.

In resolving these three propositions in reverse order, we reject appellant's fifth proposition of law for several reasons. First, New Mexico seems to have retreated from the holding of *Ross, supra,* in *State* v. *Fried* (App. 1978), 92 N.M. 202, 585 P. 2d 647. Thus, reliance on *Ross* appears to be very questionable. Second, most courts that have ruled on the specific question of allowing tapes or transcripts of tapes into the jury room have held such a practice to be proper. *State* v. *Triplett* (1956), 248 Iowa 339, 79 N.W. 2d 391; *State* v. *Reyes* (1957), 209 Ore. 595, 308 P. 2d 182; *Hampton* v. *State* (Alaska 1977), 569 P. 2d 138; *Jackson* v. *State* (1980), 274 Ind. 297, 411 N.E. 2d 609; *State* v. *Ahmadjian* (R. I. 1981), 438 A. 2d 1070; *State* v. *Poulos* (1982), 230 Kan. 512, 639 P. 2d 477; *State* v. *Evans* (Mo. 1982), 639 S.W. 2d 792; *State* v. *Barbo* (Minn. 1983), 339 N.W. 2d 905; *State* v. *Halvorson* (N.D. 1984), 346 N.W. 2d 704; *Chennault* v. *State* (Tex. App. 1984), 667 S.W. 2d 299; *State* v. *Kennedy* (App. 1979), 122 Ariz. 22, 592 P. 2d 1288; *People* v. *Walker* (1957), 150 Cal. App. 2d 594, 310 P. 2d 110; but, see, *Basham* v. *State* (Okla. Crim. App. 1959), 340 P. 2d 461. Two states have held that, while tapes may not go to the jury room, they may be replayed for the jury as long as this is done in open court. *Franklin* v. *State* (1976), 74 Wis. 2d 717, 247 N.W. 2d 721; *Owens* v. *State* (1981), 248 Ga. 629, 284 S.E. 2d 408. See, generally, Annotation (1971), 37 A.L.R. 3d 238.

The only reported Ohio case on point has followed the majority rule and permitted the replaying of a videotape exhibit during jury deliberations. "It is common practice to send exhibits admitted into evidence into the jury room. * * * Once in the jury room, the exhibits may be examined by the jury to any extent it desires. * * * We find no prejudicial error in the jury's viewing a second time an exhibit properly admitted into evidence." *State* v. *Fellows* (1975), 47 Ohio App. 2d 154, 158-159, 1 O.O. 3d 249, 252, 352 N.E. 2d 631, 635.

Generally, the propriety of sending a defendant's confession into the jury room rests with the sound discretion of the trial judge. *State* v. *Doty* (1916), 94 Ohio St. 258, 113 N.E. 811. Since we believe it is not a *per se* abuse of discretion to allow tape recordings to be replayed in the jury room, the only question remaining on this aspect is whether it was an abuse of discretion to replay the tape before the instant jury. Because we do not believe that the court's action in this regard amounted to an abuse of discretion as that term is defined, see, *e.g., State* v. *Adams* (1980), 62 Ohio St. 2d 151, 16 O.O. 3d 169, 404 N.E. 2d 144, we affirm the court of appeals' decision on this issue.

As to the fourth proposition of law, appellant contends that he has an inviolable right to be present when the trial court rules on a request by the

deliberating jury to replay portions of his tape-recorded confession. In relying on the decision in *State* v. *Grisafulli* (1939), 135 Ohio St. 87, 13 O.O. 440, 19 N.E. 2d 645, appellant asserts that he has the right to be present, either personally or by counsel, at all stages of his trial.

The underlying facts assisting our decision on this issue were placed on record by appellant's trial counsel, Darrell Van Horn, who attested to the facts set forth in support of appellant's motion for a new trial. According to Van Horn's uncontroverted recitation of facts, appellant's attorneys told the court that they would be having dinner at a particular restaurant. They then went to a different restaurant. While they were out, the jury had asked that appellant's confession be played again for them. According to the court, the bailiff tried but failed to contact the defense attorneys at the restaurant where they said they would be. The prosecutor was contacted and returned to the courtroom. At the court's direction, the bailiff went into the jury room and replayed the whole tape. The jury then asked him to replay a specific portion of the tape, and he did so. When the defense attorneys got back from dinner, the court told them what had happened.

While appellant is correct in his recitation of our holding in *Grisafulli, supra,* we believe that the record must affirmatively indicate the absence of a defendant or his counsel during a particular stage of the trial. *State* v. *Blackwell* (1984), 16 Ohio App. 3d 100, 16 OBR 106, 474 N.E. 2d 671. "Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where 'a fair and just hearing * * * [is] thwarted by his absence.' " *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 286, 6 OBR 345, 349, 452 N.E. 2d 1323, 1330, quoting *Snyder* v. *Massachusetts* (1934), 291 U.S. 97, 108. Thus, in *State* v. *Blackwell, supra,* where the defendant was absent during the giving of additional instructions to the jury, the court found no prejudice because counsel was present and thus had an opportunity to object.

In the case at bar, the defense had a chance to object to sending the tape in with the jury. The record shows that the court told the jury during final instructions that a bailiff would replay the tape on request, and that defense counsel objected to this instruction. By the time the actual request came, the defense's objection had been heard and the decision to let the jurors hear the tape had been made. The court was not ruling on the jury's request, but carrying out a ruling it had already made.

A fair and just hearing was not thwarted by the court's allowing the tape to go to the jury without giving defense counsel an additional chance to be heard on the matter. Moreover, the Van Horn statement of facts does not affirmatively indicate that appellant himself was absent at any point—it states only that his attorneys were. In any event, since we view any error in this regard to be harmless, we affirm the court of appeals' disposition on this issue.

With respect to appellant's third proposition of law, it is submitted that the court of appeals misunderstood the issue set forth in the fourth proposition of law before us, thus necessitating a remand under *Danner, supra,* since the appellate court essentially failed to comply with App. R. 12(A).

Upon a review of the circumstances surrounding this issue, we find no violation of App. R. 12(A) by the court of appeals below that would necessitate a remand under *Danner, supra.* We believe that appellant's assignment of error before the appellate

court was directly disposed of by the court of appeals. In his reply brief, appellant attempted to clarify his argument in what amounted to be an entirely new assignment of error. Since the court of appeals properly disposed of the assignment of error in accordance with App. R. 12(A), we reject appellant's third proposition of law.

In appellant's sixth proposition of law, he contends that the prosecutor cannot tell the jury that its verdict of death is a "mere recommendation" to the court. Appellant asserts that such a statement impermissibly reduces the jury's sense of responsibility for the death sentence. In support of his position, appellant relies on *Caldwell* v. *Mississippi* (1985), 472 U.S. 320.

In our view, the judge and prosecutor in the instant cause were correct in referring to the jury's decision as a recommendation that the trial court need not accept. See R.C. 2929.03(D)(2). Hence, we reaffirm our prior refusal to extend *Caldwell* so as to forbid telling juries that they can only recommend the death sentence and not impose it. See, *e.g.*, *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 142-144, 22 OBR 203,

219-220, 489 N.E. 2d 795, 811-813. Even if appellant were correct on this point, it is noteworthy that he failed to object to the alleged prosecutorial misconduct. Since we do not believe that the prosecutor's statements deprived appellant of a fair trial, any alleged prosecutorial misconduct was harmless beyond a reasonable doubt. See *State* v. *Wade* (1978), 53 Ohio St. 2d 182, 7 O.O. 3d 362, 373 N.E. 2d 1244.

Appellant's seventh proposition of law concerns the prosecutor's remarks in closing argument of the penalty phase with respect to appellant's mitigating witness Dr. Kisin.[2] Appellant asserts that the references to Dr. Kisin having been paid were "highly derogatory" and are similar to the prosecutorial misconduct condemned in *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883.

Upon a review of the statements made and the context in which they were uttered, we do not believe that the remarks complained of here rise to the level of those we criticized in *Smith, supra.* Similar to our disposition in *State* v. *Maurer* (1984), 15 Ohio

---

[2] During appellant's closing argument, counsel said: "* * * I think that when you look at it and the State will attack the credibility and try to claim that Dr. Kisin was a so-called paid witness by the defense. Well, when I asked Dr. Kisin * * * about how does Joe feel about living or dying, he indicated to you that a part of him he felt still wants to.

"Now, if he is just totally coming in here to build up Joe, would he sit here and tell you that?"

The prosecutor said of Dr. Kisin in his closing argument:

"Dr. Kisin, if he is a paid defense witness, I think that he should give his money back. He talks completely about hearsay, everything he said was a summary of what

Joe said a summary of what Fay[e] said, a summary of what Mrs. Clark said, but not a summary of what the witnesses said[,] of what you heard."

The prosecutor went on to say:

"Dr. Kisin, and I think the only thing his testimony was worth listening to is that in normal people they get less violent as time goes on and they become less prone to commit violent offenses, but we asked specifically in this case, and that is what we are talking about in this case, the historical background of Joe Clark, has he become less violent? No, he has become more violent. Has he become less prone to commit criminal offenses? No. He has become more prone.

"I guess if anybody should pay Dr. Kisin's bill it should be the State."

St. 3d 239, 266-268, 15 OBR 379, 402-404, 473 N.E. 2d 768, 792-794, we firmly believe beyond a reasonable doubt that the prosecutor's remarks concerning Dr. Kisin did not affect the jury's recommendation of death in the penalty phase of the proceedings. In any event, since appellant did not raise an objection either during or after the prosecutor's remarks, and since such remarks did not deprive appellant of a fair trial, *State* v. *Wade, supra,* any error in this respect was harmless.

In his eighth proposition of law, appellant argues that his statements to Sgt. Przeslawski should have been suppressed for three reasons: first, the police questioned him without the presence of counsel in violation of his Sixth Amendment right to counsel; second, his waiver of constitutional rights was involuntary; and third, his statement itself was involuntary.

The Sixth Amendment "requires the existence of both a 'criminal prosecutio[n]' and an 'accused' " for the right to counsel to attach. *United States* v. *Gouveia* (1984), 467 U.S. 180, 188. Therefore, the right attaches as soon as, but not before, adversary judicial proceedings between the state and the defendant begin "by way of indictment, information, arraignment, or preliminary hearing." *Id.* at 185, citing *Kirby* v. *Illinois* (1972), 406 U.S. 682. Once the right attaches, police may not elicit statements from the accused that incriminate him as to the crime charged. *Massiah* v. *United States* (1964), 377 U.S. 201.

In this case, appellant's uncounseled post-arraignment statements dealt with a crime other than the one for which appellant had been arraigned. The municipal court arraignment on January 17 dealt with "the incident that occurred the night before * * *," which was the Ohio Citizens robbery and assault. The statements introduced at trial dealt with the murder of Manning. When appellant was questioned on January 23, 1984, no adversary judicial proceedings in the Manning case had been held; the trial docket indicates that the indictment was not handed down until February 2, 1984.

There is no question that the right to counsel in the Ohio Citizens case had attached. It has never been held, however, that attachment as to one criminal charge entails attachment as to all other charges that might later be brought. Indeed, the United States Supreme Court has said precisely the opposite. "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right to counsel has not yet attached, are, *of course,* admissible at a trial of those offenses." *Maine* v. *Moulton* (1985), 474 U.S. 159, 180, fn. 16 (dictum) (emphasis added). This is so because "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not yet attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Id.* at 180. Thus, initiation of adversary proceedings with respect to one charge causes the right to attach only as to that charge.

Assuming, however, that the Sixth Amendment right to counsel had attached with regard to the Manning murder, the question would arise as to whether appellant had effectively waived it. In *Michigan* v. *Jackson* (1986), 475 U.S. 625, the high court held that once the right to counsel has attached and been asserted by an accused, he may not be interrogated unless he initiates the conversation. See, also, *Edwards* v. *Arizona* (1981), 451 U.S. 477.

Appellant asserts that in *Jackson, supra,* the court held that a waiver of *Miranda* rights is invalid when given in response to questioning initiated by the state after arraignment at which counsel has been appointed.

This assertion, however, is not totally correct. In *Jackson,* the defendant explicitly requested at the arraignment that counsel be appointed. In the instant cause, the record does not show whether appellant asserted his right to counsel at the arraignment. Since there is no indication in the record that counsel was requested at arraignment, the holding in *Jackson, supra,* does not apply herein.

Nevertheless, we should also consider whether appellant voluntarily, knowingly and intelligently waived his *Miranda* rights, *North Carolina* v. *Butler* (1979), 441 U.S. 369, 374-375, and whether the confession was voluntary, *Jackson* v. *Denno* (1964), 378 U.S. 368. While voluntary waiver and voluntary confession are separate issues, the same test is used to determine both, *i.e.,* whether the action was voluntary under the totality of the circumstances. *Fare* v. *Michael C.* (1979), 442 U.S. 707; *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051.

In *Colorado* v. *Connelly* (1986), 479 U.S. 157, the court held that "police overreaching" is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis.

In the cause *sub judice,* the appellant does not assert that he was physically deprived, nor does the record reveal any type of physical deprivation. In fact, the record clearly indicates that appellant was allowed to use the restroom and was provided coffee and cigarettes. There is no indication that appellant was beaten, threatened or promised anything. Appellant stated during his confession that no threats or promises were made and the trial court specifically found no physical deprivation, mistreatment, threats or inducements.

Even if we were to find that the tactics used by the detectives in questioning appellant were coercive, thus necessitating a totality of the circumstances analysis, we are convinced that the waiver of rights and confession were given by appellant voluntarily.

At the hearing on appellant's motion to suppress statements, the main issue was whether appellant's mental condition negated his capacity to act voluntarily. While the defense's psychiatrist testified that a reading of the medical records led him to conclude that appellant suffered brain damage as a result of a suicide attempt, and that such damage would have impaired appellant's ability to make and form choices, a neurologist who treated appellant testified that appellant, from a medical-neurological standpoint, was capable of voluntarily waiving his rights.

It is also important to note that appellant had heard his *Miranda* warnings five times on the day prior to the time he made his confession and that he acknowledged that he understood his rights. In addition, the record shows that appellant signed a written waiver of rights which is strong proof that such waiver was valid. *North Carolina* v. *Butler, supra.*

Thus, we hold that under the totality of the circumstances, appellant's waiver and confession were voluntary. Therefore, we find appellant's eighth proposition of law to be unmeritorious.

In his ninth proposition of law, ap-

pellant contends that the .32 caliber revolver and all the testimony relating to it should have been excluded since the revolver was damaged by excessive firing while in the custody of the state, and appellant's expert witness was unable to perform tests as a result. In support of his argument, appellant relies on the case of *United States* v. *Valenzuela-Bernal* (1982), 458 U.S. 858, 873-874, where it was held that an accused's right to have access to evidence, grounded in the Fifth and Fourteenth Amendments to the United States Constitution, is violated where evidence which reasonably could have affected the judgment of the trier of fact is not available to the accused because of government action or inaction.

We believe, however, that the apparent unavailability of the revolver for test-firing by the appellant's experts does not require a reversal of defendant's conviction. In *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 129, 19 OBR 330, 336, 483 N.E. 2d 1157, 1164, certiorari denied (1986), 474 U.S. 1073, rehearing denied (1986), 475 U.S. 1040, we stated that "[i]n order for * * * [the accused] to succeed on this proposition, he must show that the trial court abused its discretion in the admission or exclusion of the evidence in question, and that the * * * [accused] has been materially prejudiced thereby. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122 [38 O.O. 2d 298]."

A careful review of the record reveals no evidence of bad faith on the part of the state in test-firing the subject revolver. In addition, we do not believe that the trial court abused its discretion in admitting the revolver and surrounding testimony into evidence. The record indicates that appellant was able to examine the revolver, as well as having access to the test-firings performed on the revolver prior to its becoming inoperable. In sum, we can discern no constitutional deprivation of rights with regard to this issue. Therefore, we affirm the appellate court's disposition on this issue.

The tenth and twelfth propositions of law set forth by appellant are related. In his tenth proposition of law, appellant again argues that the court of appeals violated App. R. 12(A) by failing to pass upon an assignment of error. In his twelfth proposition of law, appellant contends that the death sentence rendered in the cause *sub judice* was disproportionate when viewed against the life sentence he received in the trial for the robbery-murder at the Lawson's store. Appellant asserts that the appellate court erred in failing to consider this as an assignment of error pursuant to App. R. 12(A). Appellant further submits that the death sentence here is disproportionate to the penalty imposed in similar cases.

As in his prior proposition of law alleging a violation of App. R. 12(A) on the part of the appellate tribunal below, appellant's argument in this context is devoid of merit. In a capital case, R.C. 2929.05(A) mandates that "[i]n determining whether the sentence of death is appropriate, the court of appeals and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases."

Clearly, the foregoing statutory provision requires a proportionality review irrespective of whether a litigant raises it as an issue. Thus, in capital cases, proportionality is not a proper subject of an assignment of error before a court of appeals so as to invoke the particular strictures of App. R. 12(A). To hold otherwise would expand the scope of proportionality review beyond the intendment of the General Assembly. In the instant case, for example, the appellate court would have

been required to consider the murder at the Lawson's store in its proportionality review even though it is not a "similar case" as construed by this court. Thus, we believe that the court of appeals acted properly in not considering the sentence rendered in the case of the murder at the Lawson's store since it was not a "similar case." As this court held in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, paragraph one of the syllabus, a reviewing court engaged in proportionality analysis need not consider cases where the death penalty was not imposed. For these reasons, we overrule appellant's tenth and twelfth propositions of law.

Lastly, in his eleventh proposition of law, appellant argues that the court of appeals confused the facts of the instant cause with those of the case of the murder at the Lawson's store, thereby depriving him of his statutory right to a proper weighing of the aggravating circumstance against the mitigating factors.

Assuming, *arguendo*, that the appellate court did indeed misunderstand the facts and, thus, wrongly weighed them, such error would be corrected by this court's independent weighing of the aggravating circumstance against the mitigating factors. Hence, remand would not be the proper remedy since the independent review required in capital cases would correct any errors or omissions prevalent in the prior proceeding. See *Maurer, supra.* Therefore, appellant's eleventh proposition of law is not well-taken.

Having reviewed the various propositions of law propounded by appellant, we next turn to our responsibility of independently weighing the aggravating circumstances against the mitigating factors of the case. Here, the single aggravating circumstance alleged and proved beyond a reasonable doubt was that appellant committed the aggravated murder offense while committing, or fleeing immediately after committing aggravated robbery, and that he was the principal offender in the aggravated murder.

At the mitigation hearing, appellant called the Lucas County jail chaplain to testify to the morality of capital punishment, and a sociologist to testify to its lack of deterrent effect. He called his mother to testify to the events of his life from his birth to his father's death in 1963 and from approximately 1983 to the time of his arrest. Appellant also called Dr. Kisin, a psychologist, to testify about his discussions with appellant concerning the same period. Dr. Kisin also gave his opinion about appellant's state of mind during and after the murder and his prospects for rehabilitation. Appellant's two children testified that they did not want their father to be executed. Additionally, appellant made an unsworn statement on his own behalf. For its part, the state called Sgt. Przeslawski, who testified that appellant told him he attempted suicide because he did not want to return to prison.

There is evidence in the record that the victim, David Manning, attempted to resist the robbery, and it could be argued that resistance to a robbery attempt constitutes inducing or facilitating the offense. However, this would be an illogical reading of the statute. In our view, one has the right to use reasonable force to resist the commission of a crime. Whatever "inducing or facilitating the crime" may mean, it cannot mean a robbery victim, using no weapon, making an attempt to grab an armed robber. Assuming that Manning's action did induce the offense, it would be entitled to little weight as a mitigating factor for the same reason.

Additionally, there is no evidence

in the record of duress, coercion, or strong provocation, or that appellant's capacity to appreciate the criminality of his conduct or conform to the law was impaired by any mental disease or defect. Appellant was thirty-five at the time of the offense, well past his majority, and no evidence suggests that his age is relevant to the crime or sentence. *State* v. *Post* (1987), 32 Ohio St. 3d 380, 394-395, 513 N.E. 2d 754, 768. He has five prior felony convictions, and was the principal and only offender. Thus, the mitigating factors of R.C. 2929.04(B)(2) through (6) do not apply.

The nature and circumstances of this crime are entitled to no great weight in mitigation. Appellant was a drug addict. His wife, who had been supporting his habit with her earnings as a prostitute, was in jail, and the appellant needed money. Appellant stated that he robbed the service station to get money for drugs. This does not weigh heavily, if at all, in mitigation. Appellant's need for drugs may have led him to rob, but it certainly did not require him to kill in the course of the robbery.

Appellant was, however, disadvantaged by his history and background. His father died when he was fifteen, and he lacked significant parental discipline after that. His intelligence was described as dull normal at best, borderline retarded at worst. Yet appellant has a high school equivalency degree and is literate. His low intelligence is entitled to some weight in mitigation. Cf. *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 106, 512 N.E. 2d 598, 609. Appellant's daughter testified that she loved him and both she and her brother did not want him to die. Such testimony has never been afforded great weight as a mitigating factor.

The evidence concerning appellant's family life is mixed. According to his daughter, Cheryl, appellant had made efforts to be a good father. On the other hand, he let his wife prostitute herself to pay for his drug addiction. While a strong family background is entitled to some weight, *Stumpf, supra,* the circumstances here suggest that this factor should be given little weight.

Appellant has stated that he feels remorse for his crime, and Dr. Kisin believed that his attempt at suicide demonstrated that. On the other hand, when Sgt. Przeslawski interrogated appellant, appellant originally denied what he had done. It is our belief that this denial does not indicate genuine remorse. Additionally, appellant told Przeslawski that he attempted suicide because he could not face prison. Still, because appellant's professions of remorse are backed by some evidence, they should be assigned at least some slight weight.

Despite the existence of some mitigating factors, the aggravating circumstance outweighs them beyond a reasonable doubt; therefore, we find that the death sentence rendered herein is appropriate. Appellant's remorse, his disadvantaged background, and his attempts to help his daughter cannot outweigh his killing Manning during an armed robbery. As the trial court observed, appellant "balanced [Manning's] life against a crass selfish motive."

Finally, this court must decide whether the sentence of death is excessive or disproportionate to the sentence in similar cases. Appellant points to the most heinous aspects of other Ohio capital cases and notes that such aspects are absent here. Nevertheless, we hold that the death penalty here is proportionate to the death sentences approved for murder coupled with robbery in *State* v. *Stumpf, supra;*

*State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922; *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906; *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140; *State* v. *Martin, supra;* and *State* v. *Jenkins, supra. Mapes* and *Martin* are especially significant in that both were robbery-murder cases without significant evidence presented in mitigation.

Although appellant argues that the death sentence is disproportionate to the life sentence he received in the trial involving the murder at the Lawson's store, the court need not consider that, for "[n]o reviewing court need consider any case where the death penalty was sought but not obtained * * *." *State* v. *Steffen, supra,* at 124, 31 OBR at 284, 509 N.E. 2d at 395.

In summary, we first find that there is no merit to any of the specific propositions of law raised by the appellant concerning the jury trial that resulted in his conviction of the crimes described. Second, we find that the aggravating circumstance outweighs any and all mitigating factors attempted to be presented by appellant beyond a reasonable doubt. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Therefore, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this cause.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.