On the morning of August 4, 1998, Eric L. Chaffer and four co-defendants, armed with sawed-off shotguns, drove to the Fifth Third Bank on Harrison Avenue. As bank employees Kevin Murray and Tracy Insprucker arrived to open the bank, two co-defendants, Clifford Jones and Trenton Pope, entered the bank. Jones pointed a shotgun at Murray and Insprucker and ordered them to get down on the ground. Murray was forced at gunpoint to collect all of the cash that was in the bank. Then Murray was ordered to get on the ground next to Insprucker.
Meanwhile, Chaffer stood outside the bank, acting as a lookout, while co-defendants Timothy Pope and Sarah Schmidt sat in the getaway car, with a one-and-a-half-year-old child in the back seat. At one point, Chaffer got the keys to Insprucker's sport utility vehicle, entered her vehicle and waited, with the engine running, outside the back door of the bank. When Jones and Trenton Pope ran out of the bank with $76,000 and a shotgun, Chaffer and his co-defendants fled from the area in both the Schmidt and Insprucker vehicles.
Employees of a neighboring company saw the suspicious activity at the bank and called the police. Chaffer, Jones and Timothy Pope ran from Insprucker's vehicle after they saw Schmidt get pulled over by the police. Chaffer was arrested a short time later.
Chaffer was charged with two counts of kidnapping, four counts of aggravated robbery, and four counts of robbery. Each of the kidnapping and aggravated-robbery counts carried two gun specifications. The trial court denied Chaffer's motion to suppress his statements to police. Chaffer proceeded to a jury trial, but after the first witness testified, he entered a plea of no contest to all counts. Chaffer was sentenced to a total of nineteen years' incarceration.
Chaffer appeals, assigning as error (1) the trial court's denial of his motion to suppress, and (2) the ineffective assistance of trial counsel. We overrule both assignments of error and affirm the judgment of the court below.
The thrust of Chaffer's first assignment of error is that his statements to the police were not voluntarily given and were obtained in violation of his constitutional rights. Chaffer claims that the police continued to interrogate him despite his requests for counsel and an end to the questioning. The question of whether an accused voluntarily, knowingly, and intelligently waived his right to counsel and his privilege against self-incrimination, and the question of whether an accused's statement was made voluntarily present distinct issues.[1]
However, both involve a consideration of the totality of the circumstances.[2]
The record supports the trial court's finding that Chaffer knowingly, intelligently, and voluntarily waived his right to counsel and his privilege against self-incrimination. Prior to advising Chaffer of his rights, Detective Robert Heinlein ascertained Chaffer's educational background, that Chaffer could read and write, and that Chaffer had not consumed drugs or alcohol since his consumption of two shots of "Thunderbird wine" approximately fourteen hours before the interview. Detective Heinlein then advised Chaffer of his Miranda rights by placing before Chaffer and reading aloud a standard notification-of-rights form. As Detective Heinlein read each right aloud, the detective asked Chaffer if he understood it. Chaffer responded affirmatively each time. Chaffer signed beneath the waiver-of-rights portion of the form, and his signature was witnessed by two detectives. We note that a signed waiver is strong proof that the waiver was valid.[3] Based upon the totality of the circumstances, we hold that the evidence supports the trial court's finding that Chaffer knowingly, intelligently, and voluntarily waived his rights.
Chaffer claims that he asked for counsel and that the police ignored his requests and continued to question him. Detective Heinlein testified that Chaffer did not make any such request. Two of the statements given by Chaffer to police were tape-recorded, and on each, Chaffer acknowledged that he was advised of his rights and that he understood them. Chaffer testified that he had requested counsel before giving the second taped statement, yet the tape recording does not reflect a request for counsel, even after Chaffer had reiterated his understanding of his rights at the beginning of the interview.
At a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact.[4] We hold that the evidence adduced at the hearing in this case provided a basis for the trial court to conclude that Chaffer had not requested counsel and, therefore, that Chaffer's statements were not taken in violation of his right to counsel.
We now turn our attention to the trial court's finding that Chaffer's confession was voluntarily given to police. A confession will not be found to be involuntary unless there is first a finding of coercive police activity.[5] In deciding whether a confession was involuntarily induced, the court must consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.[6]
After a review of the record, we hold that Chaffer's confession was not the result of coercive police activity. The record shows that Chaffer was eighteen years old, that he could read and write, and that he had attended at least the eighth grade. Chaffer had extensive experience with the juvenile deliquency system, including adjudications for carrying a concealed weapon, a probation violation, falsification, unauthorized use of a motor vehicle, eluding police, and sexual imposition.
Chaffer's interview with police lasted approximately two hours, from about 10:35 a.m. until about 12:35 p.m, with breaks between Chaffer's various statements. During that time, Chaffer was offered a drink and was allowed to use the restroom twice. Chaffer testified that he was free to walk around the interrogation room. After the interview, no officers had contact with Chaffer, except for possible restroom breaks, until approximately 4:00 p.m., when Chaffer asked to use the telephone to call his mother. After the phone call, Detective Heinlein had a short conversation with Chaffer.
After reviewing Chaffer's tape-recorded statements and the evidence and after watching the demeanor of the witnesses, the trial court concluded that Detective Heinlein was credible and that Chaffer "was lying." Moreover, Chaffer testified that he understood the term "coercion" after Detective Heinlein's explanation of the term, and neither of the taped statements contained a threat by police or any indication by Chaffer that he had felt threatened. Therefore, the record supports the trial court's conclusion that Chaffer's confession was voluntary.
Chaffer's second assignment of error alleges the ineffective assistance of trial counsel, asserting that counsel pressured him into entering a plea, thereby rendering his plea "unknowing, involuntary, and unintelligent." To sustain a claim that his counsel was ineffective, Chaffer must demonstrate that his trial counsel's performance was deficient[7] and that, but for counsel's deficiencies, he would not have entered his plea.[8]
"Because of the inherent difficulties in making the first determination, a court must indulge in a strong presumption that the challenged action might be considered sound trial strategy."[9] There is absolutely no evidence in the record to demonstrate that Chaffer was pressured by trial counsel to plead no contest or that Chaffer failed to understand the nature of the charges against him. On the contrary, the trial court engaged Chaffer in a lengthy discussion of the charges, the plea and the effect of the plea. The trial court fully complied with the requirements of Crim.R. 11 before accepting the plea, and Chaffer asked pertinent questions during the trial court's explanation.
Chaffer has failed to demonstrate that counsel's performance was deficient. Therefore, Chaffer's second assignment of error is overruled, and the judgment of the trial court is affirmed.
And the Court, being of the opinion that there were reasonable grounds for this appeal, allows no penalty. It is further Ordered that costs be taxed in compliance with App.R. 24, that a copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, and that said mandate shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
 Doan, P.J., and Hildebrandt, J., concur.
To the Clerk:
Enter upon the Journal of the Court on July 23, 1999 per order of the Court _______________________________.
Presiding Judge
[1] See State v. Moore (1998), 81 Ohio St.3d 22, 689 N.E.2d 1, citing State v. Clark (1988), 38 Ohio St.3d 252, 527 N.E.2d 844.
[2] See Id.
[3] See Moore, supra, at 32, 689 N.E.2d at 11.
[4] See State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; see, also, State v. Depew (1988), 38 Ohio St.3d 275,528 N.E.2d 542; State v. Mills (1992), 62 Ohio St.3d 357,582 N.E.2d 972.
[5] See State v. Wiles (1991), 59 Ohio St.3d 71, 571 N.E.2d 97, citing Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515.
[6] State v. Edwards (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051.
[7] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
[8] See State v. Bird (1998), 81 Ohio St.3d 582,692 N.E.2d 1013.
[9] Id.