OPINION
James C. Fisher, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas. Appellant was found guilty of involuntary manslaughter, a violation of R.C. 2903.04; aggravated burglary, a violation of R.C. 2911.11; and receiving stolen property, a violation of R.C. 2913.51. The jury also made a finding that the stolen property received by appellant was a motor vehicle.
On December 10, 1998, Jodi Senser discovered that her red 1990 Chevrolet Cavalier was missing. Senser testified the last time she saw her vehicle was when she parked it near her apartment around 10:00 p.m. the prior evening. Senser called the police to report her missing vehicle.
Sometime before 11:00 a.m. on December 11, 1998, Monica Swint, Ann Marie Tonneman, and Joy Tonneman were leaving an apartment in the Barrington Square apartment complex. Joy Tonneman testified that as she was locking the door to the apartment, she heard her daughter Ann Marie scream "Someone's been hit, call 911." Joy stated she heard the squealing of wheels and saw a red car. Joy also testified she could see two people in the front seat of the vehicle but could only identify them as two males.
Ann Marie testified that she was standing on the sidewalk in front of the apartment when she heard the sound of someone running. She stated that she saw two white males running and then get into a red car. She described the first male as six feet tall wearing a tan plaid winter coat and stated that he got into the driver's seat of the car. Ann Marie further testified she heard the squealing of tires followed by a "thump." She thought the car had hit something and as she went toward where she heard the sound, she saw a woman lying on the ground with a severe head wound.
Swint testified she also heard squealing tires followed by "a thump of something hitting the concrete." In order to see what had happened, Swint walked between two parked cars into the open driveway of the complex. Swint stated that as she cleared the two parked cars and stepped into the driveway, she saw a red car rapidly coming toward her. Swint stated that she made eye contact with the driver of the car, that he swerved to avoid hitting her, and he continued to rapidly exit the parking lot. During appellant's trial, Swint identified appellant as the driver of the vehicle. Swint, Ann Marie, and Joy each identified the red vehicle as Senser's red 1990 Chevrolet Cavalier. The car was found abandoned near the Hickory Creek Apartments approximately one mile away from the crime scene on December 15, 1998.
The person hit by the vehicle was Pamela Furlong ("victim"). She was transported to Riverside Methodist Hospital and died the morning of December 12, 1998. Dr. Keith Norton performed an autopsy on the victim. He testified during appellant's trial that the victim sustained bruises on the front of both lower legs. Dr. Norton stated the bruising was consistent with the victim being hit by the front bumper of a car. Dr. Norton also stated the victim died as the result of blunt trauma to the head. He further stated that the injury was consistent with the victim's head coming in contact with an object like the bumper of a car. Photographs of the crime scene show the victim was found lying on the ground below the bumper of a parked vehicle.
The police believed the two males were in the process of burglarizing the victim's apartment when she unexpectedly returned home. Photographs of the area show the victim's car was parked near her apartment with the trunk open. Inside the trunk were bags of groceries. Inside the open door to the victim's apartment was a two-gallon bottle of water, which the victim may have just transported from her car. The back sliding glass door of the apartment was also open. A videotape of the inside of the apartment showed drawers dumped of their contents onto the floor. A crowbar was also found inside the apartment, and a window in the basement of the apartment was broken. The police believed at least one of the individuals entered the apartment through the basement window because there was broken glass on the basement floor.
In July 1999, appellant was tried before a jury and found guilty of involuntary manslaughter, aggravated burglary, and receiving stolen property. On October 17, 2000, appellant's convictions were reversed and the case was remanded to the trial court for a new trial in State v. Fisher (2000), Franklin App. No. 99AP-1497, after this court found that some of the state's evidence against appellant was improperly admitted by the trial court. On September 11, 2001, a second jury found appellant guilty of involuntary manslaughter, aggravated burglary, and receiving stolen property. Prior to appellant's second trial, Joseph Snelling, the man investigators believe was the passenger in the vehicle when appellant hit the victim, pled guilty to the burglary of the victim's apartment. Appellant appeals his convictions and presents the following two assignments of error
 [I.] The trial court erred in admitting testimony that the vehicle believed to have been involved in the accident was recovered a short distance from the home of Appellant's half-brother.
 [II.] The jury verdict was not supported by sufficient credible evidence and was against the manifest weight of the evidence. As a result, Appellant was denied due process protections under the state and federal Constitutions.
Appellant argues in his first assignment of error the trial court erred when it admitted testimony that Senser's vehicle was recovered in an apartment complex next to the complex in which appellant's half-brother resided. Detective Patrick Dorn of the Columbus Police Department testified that appellant's half-brother lived about "355 paces" away from where the vehicle had been abandoned. Detective Dorn also testified that it took him less than three minutes to walk from the car's location to the apartment. Appellant claims the relevancy of this evidence was small when compared with its prejudicial impact.
Evid.R. 401 states: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even though evidence may be relevant, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). When considering the admissibility of evidence pursuant to Evid.R. 403, "the trial court is vested with broad discretion, and an appellate court should not interfere absent a clear abuse of discretion." State v. Hanna,95 Ohio St.3d 285, 290, 2002-Ohio-2221, at ¶ 29. In order to reverse a criminal conviction, the accused must show the trial court abused its discretion in the admission or exclusion of the evidence in question and that he has been materially prejudiced thereby. State v. Clark (1988), 38 Ohio St.3d 252, 262, certiorari denied (1989),489 U.S. 1071, 109 S.Ct. 1355. See, also, State v. Barnes(2002),94 Ohio St.3d 21, 23.
Evidence of where Senser's vehicle was found is relevant in several ways. First, the location was within a mile of the crime scene and could be reached easily by driving down a major highway connecting the two locations. Second, the proximity of the location to where the crime occurred could have benefited appellant because it allowed him to quickly abandon the car shortly after the crime. Third, the fact that appellant's half-brother lived in an apartment complex close to the location was significant because appellant was able to avoid being seen by the police and to have transportation back to his home, which was several miles away. In its appellate brief, the state argues this evidence is relevant for the following reasons:
 As could be expected, the car was quickly abandoned just over one mile away from the homicide scene, no doubt out of fear that it would be quickly identified by the witnesses of whom the driver was aware. But the driver also chose a location that would have been highly convenient for [appellant], because [appellant] could obtain help (unwitting or otherwise) from his nearby half-brother. [Appellant] could quickly walk to his half-brother's apartment and hang out for awhile, or he could obtain a ride from the half-brother, or, as the trial court noted, [appellant] could have just picked the location because he was familiar with it.
A review of the evidence does not show that it was unfairly prejudicial, confused the issues, or misled the jury. Simply because evidence has a tendency to prove a defendant is guilty does not make it unfairly prejudicial. Appellant's counsel had the opportunity to explain the coincidental aspect of where the vehicle was found to lessen any impact on the jury. Additionally, the main focus of the trial concerned the identification of appellant as the driver of the vehicle. The fact that the vehicle was found near appellant's half-brother's apartment merely provides an explanation as to why the vehicle was left there. Without appellant being identified as the driver of the vehicle at the time of the crime, the relevance of where the vehicle was found is greatly diminished.
Accordingly, after having reviewed the evidence, we find the trial court did not abuse its discretion when it allowed the state to present evidence concerning the location of Senser's vehicle in relation to appellant's half-brother's apartment. The evidence was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that his convictions were not supported by sufficient, credible evidence. Appellant also argues that his convictions were against the manifest weight of the evidence. Appellant claims that there was insufficient proof to establish appellant burglarized the victim's home and operated the car that struck and fatally injured her. Appellant also claims the evidence used against him was unreliable, inconsistent, and tainted by post-event information.
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998),523 U.S. 1125, 118 S.Ct. 1811. In reviewing a record for sufficiency, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Twyford (2002), 94 Ohio St.3d 340, 354. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied, 525 U.S. 1077,119 S.Ct. 816.
Appellant was convicted of aggravated burglary, a violation of R.C.2911.11; receiving stolen property, a violation of R.C. 2913.51; and involuntary manslaughter, a violation of R.C. 2903.04. R.C. 2911.11(A) states:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
In the present case, evidence was presented showing that the basement window had been broken from the outside. Aubrey Furlong, the victim's sixteen-year-old daughter, who was also living in the apartment at the time of the crime, testified that the crowbar found in the apartment was not in the apartment when she left for school that morning. Furlong also testified that it appeared her mother's jewelry boxes had been rummaged through and left in a different manner than she remembered the morning of the crime.
Ann Marie testified she saw two males running away from the victim's apartment being chased by a small dog, later identified as the victim's dog. Monica Swint, Ann Marie Tonneman, and Joy Tonneman all testified they witnessed a red vehicle squeal its tires and rapidly accelerate away from the victim's apartment. Swint positively identified appellant as the driver of the red vehicle. The position of the victim's body after it had been hit in relation to the skid marks found on the pavement and the bruise marks on her legs establish the victim was in front of the vehicle when she was hit. Senser testified that damage found on the front of her vehicle was damage that had occurred after it had been stolen. The victim's car was found with the trunk open. Groceries were found inside the truck and a two-gallon bottle of water was found inside the open front door to the victim's apartment. The back sliding glass door of the apartment was also found open.
The above evidence construed in a light most favorable to the state presents the following reasonable scenario. Appellant and another individual trespassed into the victim's apartment, gaining entrance into the apartment by breaking the basement window. The disorderly state of the apartment shows that appellant and another individual were attempting to find items in the apartment to steal. The fact that appellant and the other individual ran from the apartment and rapidly drove away from the apartment also indicates they were trespassing and attempting to escape from the area. The striking of the victim with the front of the car shows the victim ran in front of the car in an attempt to stop them from escaping. The fact that groceries were found both in the front entryway of the victim's apartment and in the trunk of her car indicates the victim had recently arrived at her apartment and caught appellant and his accomplice while they were burglarizing her apartment. The fact that the victim died from her injuries after being struck by the vehicle appellant was driving establishes the fact that appellant inflicted physical harm on her. Accordingly, we find that sufficient evidence was presented to sustain appellant's aggravated burglary conviction.
Receiving stolen property is a violation of R.C. 2913.51(A), which states "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Senser testified that appellant was not authorized to use her vehicle. An eyewitness, Swint, testified she witnessed appellant driving Senser's vehicle. Additionally, the vehicle was abandoned near the victim's apartment. After construing these facts in a light most favorable to the prosecution, we find that sufficient evidence was presented to show that appellant had reasonable cause to believe the vehicle had been obtained through the commission of a theft offense. Therefore, we affirm appellant's receiving stolen property conviction.
Appellant was also convicted of involuntary manslaughter. R.C.2903.04(A) states "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." We have already found that sufficient evidence exists to show that appellant committed aggravated burglary. Aggravated burglary is a first-degree felony. R.C. 2911.11(B). The evidence also shows that appellant caused the death of the victim while he was attempting to flee after committing the felony. Accordingly, we find that sufficient evidence was presented to affirm appellant's involuntary manslaughter conviction.
Appellant also argues that his convictions were against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, following Clemons, at 444. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999),527 U.S. 1042, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001),93 Ohio St.3d 253, 263. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
The basis of appellant's argument that his convictions were against the manifest weight of the evidence is Monica Swint's testimony. Appellant claims Swint's testimony that appellant was the driver of the vehicle that hit the victim was unreliable. During direct examination, Swint testified:
 Q. I'd like you to tell the ladies and gentlemen of the jury what is it about the [appellant] you've just identified that caused you to make the identification, is there a certain feature? You tell us.
 A. Yeah. His eyes, even now, his body structure has changed somewhat, but as soon as he looked up at me and stared at me, I have no doubt, because it's the eyes, the eyes were totally glared on me that morning and fixed on me and I on him, that's why I'm sure at first I thought I surprised him, but then I think he also was a little unnerved that there was somebody else that may have seen this and he didn't think I was there.
* * *
Q. Okay. How certain are you, Monica?
A. Absolutely sure.
During his trial, appellant introduced the testimony of Dr. Solomon Fulero, who testified research has shown "that a witness who says that they're a hundred percent sure is just about as likely to be wrong as the one who hems and haws and isn't certain. And so you can't use confidence as an indicator that the witness * * * is correct."
A review of the complete record shows that even though Swint was the only person who positively identified appellant as the driver of the vehicle that hit the victim, other testimony and evidence supports her testimony. For example, Ann Marie Tonneman described the jacket the driver was wearing prior to appellant's arrest. When shown a jacket owned by appellant, Ann Marie testified that it was the same jacket. The tire marks found on the pavement buttress Swint's testimony that the car rapidly accelerated from the crime scene.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See Smith, supra, at 114. The record supports the jury's determination that appellant was the driver of the vehicle that struck the victim. Accordingly, we find that sufficient evidence was presented to support appellant's convictions and his convictions were not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and BOWMAN, JJ., concur.