OPINION
Defendant, Lloyd Nowell, appeals from his conviction and sentence for felonious assault.
Defendant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1). Defendant filed a motion to suppress the statements he made to police. Following a hearing, the trial court overruled Defendant's motion.
After new counsel was appointed to represent Defendant, the motion to suppress Defendant's statements was renewed. Another hearing was held, following which the trial court once again overruled Defendant's motion to suppress his statements.
Defendant was subsequently tried before a jury and found guilty. The trial court sentenced Defendant to five years imprisonment.
Defendant timely appealed to this court, challenging the trial court's overruling of his motion to suppress.
 ASSIGNMENT OF ERROR "THE DEFENDANT'S MOTION TO SUPPRESS HIS CONFESSION WAS DENIED IN ERROR BY THE TRIAL COURT."
 On September 6, 2000, at 12:30 a.m., Dayton police officers weredispatched to 100 North Jefferson Street, Apartment 405, following a 911call reporting that a woman at that location was being severely beaten.Upon arrival, the officers knocked on the apartment door. Defendant openedthe door, stepped out into the hallway, and immediately said: "I f_____up. She's in the bedroom." Defendant then placed his hands behind hisback, apparently expecting that the officers would handcuff him. Up tothat point, the officers had asked Defendant no questions.
 One of the officers asked Defendant if they could come inside.Defendant said they could. Once Defendant and the officers entered theapartment, and before the officers said anything more, Defendant stated:"I f______ up. She's in there," and Defendant motioned toward thebedroom. One of the officers then entered the bedroom and discovered apartially clad woman sitting on the bed, exhibiting severe trauma to herhead, face and chest. Once again, before the officers said anything,Defendant stated: "I f_____ up. I admit it." Defendant was thenarrested.
 The officers sat Defendant on the couch. Before being asked anyquestions, Defendant said: "I was drunk. I did that to her. I admit it."Officer Pauley then asked Defendant his name, date of birth, socialsecurity number, etc., which are routine booking questions. Defendantprovided that information. He also volunteered, without any otherquestions about what had happened to the woman being asked, that he wouldprobably go to prison for fifteen or twenty years for what he had done.
 While officers remained in the living room with Defendant, OfficerTrick was in the bedroom talking to the victim. Defendant overheard thatconversation and remarked: "Yes, I admit it. I poured grease and Wessonoil on her. Whatever she says I did to her, I did it." Defendant hadstill not been asked any questions about the assault.
 At the crime scene Defendant was very calm. The officers observed nosigns that Defendant was intoxicated. While at the crime scene police didnot advise Defendant of his Miranda rights. Defendant was subsequentlytaken to jail.
 Later, at around 9:00 a.m. that same morning, Det. Gross interviewedDefendant at the police station. Det. Gross utilized a pre-interview formto advise Defendant of his rights. Defendant acknowledged hisunderstanding of each and every one of his rights. Defendant not onlysigned the waiver of rights but also expressly indicated in writing onthe pre-interview form his willingness to waive his rights and talk topolice without an attorney present. Defendant then gave police a statementabout the assault in this case.
 Defendant argues that the trial court should have suppressed thestatements he made to police at the crime scene because police failed toadvise him of his Miranda rights.
 The duty of police to advise a suspect of his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436, arises only when the suspect issubjected to "custodial interrogation." Id; State v. Gumm (1995),73 Ohio St.3d 413, 1995-Ohio-24; State v. Durham (June 22, 2001),Montgomery App. No. 18586. The record amply demonstrates that all of thevarious admissions of guilt Defendant made to police while at the crimescene were unsolicited, volunteered statements. They were not the productof any questioning or interrogation by the police. Hence, the fact thatpolice did not advise Defendant of his Miranda rights before he made thoseis of no consequence. His volunteered statements are admissible againsthim.
 Regarding the statement Defendant gave to Det. Gross, the recorddemonstrates that Defendant was properly advised of all of his Mirandarights, that he said that he understood his rights, and that heknowingly, intelligently, and voluntarily waived his rights and agreed totalk to police. No violation of Defendant's Miranda rights isdemonstrated on this record.
 Defendant additionally argues that the State failed to prove that hisstatements to police were voluntary. In deciding that question thetotality of the circumstances must be examined. A finding ofinvoluntariness requires some form of police overreaching: the use ofsome inherently coercive tactic. Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515; State v. Clark (1988), 38 Ohio St.3d 252, 261.
 Defendant does not allege, nor does this record show, that he was inany way physically abused or mistreated, deprived of sleep, food ormedical treatment, threatened, promised anything, or otherwise coerced inany manner by the police officers. Such matters may support a finding ofinvoluntariness even after Miranda rights are waived. See State v. Waldo(Sept. 21, 2001), Champaign App. No. 99CA24, 2001-Ohio-1349. However, nocoercive measures of that kind are demonstrated here.
To support his claim that his statements to police were involuntary, Defendant further asserts that he was frightened and in a state of shock, that he was intoxicated, and that he did not appreciate the severity of the situation. The record refutes these claims. The police officers testified that Defendant was very calm and soft spoken. None of the officers observed any signs that Defendant was intoxicated. No smell of alcohol, no red, glassy eyes, no slurred speech, no impaired coordination was noted. Defendant's claim that he did not appreciate the severity of his situation is contradicted by his statement to police that he would probably go to prison for fifteen to twenty years for what he had done. On the totality of these facts and circumstances, we agree that Defendant's statements to police were voluntary. Therefore, the trial court did not err when it overruled his motions to suppress evidence.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.