The STATE of Ohio, Appellee,

v.

CRIMI, Appellant.*

[Cite as *State v. Crimi* (1995), 106 Ohio App.3d 13.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67002.

Decided Aug. 21, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1498, 659 N.E.2d 314.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Edward O. Patton*, Assistant Prosecuting Attorney, for appellee.

*John F. Burke III*, for appellant.

KARPINSKI, Judge.

This appeal arises from a judgment of the Cuyahoga County Court of Common Pleas finding defendant-appellant Angelo Crimi ("defendant") guilty of felonious assault and failure to comply. Defendant now raises four assignments of error which dispute the following: (1) whether the jury should have been allowed to view a joint videotape exhibit in their deliberation, (2) whether the defense attorney should have been allowed to use the videotape on cross-examination of the state's witnesses, (3) whether defendant was denied his right to effective assistance of counsel, and (4) whether the conviction was contrary to the manifest weight of the evidence. For the following reasons, we reverse and remand.

I

Defendant was charged with one count of felonious assault in violation of R.C. 2903.11 with a peace officer specification, as the alleged victim, Melvin Smith, is a detective with the Cleveland Police Department. The second count of the indictment charged defendant with failure to comply with the order or signal of a police officer in violation of R.C. 2921.331. Prior to trial, defendant, having been previously convicted of aggravated burglary, admitted to a second specification for aggravated felony.

The charges against defendant arose from a routine traffic stop and resulting high speed chase. Portions of this chase were recorded on videotape for the television show "COPS." The video camera recording the action was mounted in a black and white patrol car that participated in the later stages of the chase. The three-to-five-minute videotape was submitted as a joint exhibit. The trial judge allowed the videotape to be shown only once at trial and then only without stop and without replay. Nor did the trial judge allow the defense to use the tape during cross-examination of the state's witnesses. The trial judge further denied the jury's request to see the videotape during its deliberations.

The record demonstrates the following facts. On September 2, 1993, two unmarked police cars were together patrolling the Sixth District of Cleveland. Detectives Smith and Hall were in the first car, a black Chevrolet Caprice with no markings. Detectives Johnson and Waid were in the other unmarked police vehicle. At approximately 11:00 p.m., both cars had stopped at a red light at the intersection of East 157th Street and St. Clair Avenue, when defendant, driving a Pontiac Trans Am, passed and ran through the red light. Detectives Smith and Hall, in the first unmarked car, turned on their flashing lights and sirens and signalled defendant to pull his car to the side of the road at East 152nd Street.

Detectives Smith and Hall then left their car and approached defendant's vehicle. They were not in uniform. Both detectives testified, however, that

clearly visible were their badges hanging from their necks, as was the practice among undercover detectives. As they approached defendant's vehicle, the two detectives announced they were police officers. Defendant's friend Christine Yafanaro, a passenger in defendant's vehicle, testified that both she and the defendant were frightened when they witnessed "two black men jump out of their car with guns in their hand [*sic* ]." Defendants claim they fled because they saw no badges and were alarmed.

Seeing defendant speed away, Detectives Smith and Hall returned to their vehicle and, together with Detectives Johnson and Waid, engaged in a hot pursuit of defendant's vehicle. This chase through the Sixth District lasted approximately five minutes, with the vehicles reaching speeds over sixty miles per hour. At one point, defendant's vehicle was headed north on London Avenue with Detectives Smith and Hall following close behind. Testimony showed that defendant was travelling at such a high rate of speed that defendant became airborne while going over the tracks on London. When defendant's car came down, his car spun around to such a degree that it faced the opposite direction, southbound on London Avenue. Detectives Smith and Hall pulled in front of defendant's vehicle, partially blocking him. Believing defendant's car had stalled, they got out of their car. However, defendant managed to start his car and, allegedly driving his vehicle directly at Detective Smith, forced Smith to jump out of the way. Detectives Smith and Hall returned to their car and resumed the chase followed by other police vehicles.

At this point, one of the vehicles in the chase was the patrol car that contained the video camera. The chase continued to the area of Euclid and Wayside Avenues, where defendant's car became disabled when it hit a large brick and blew out the rear tire. Defendant and Yafanaro left the car and were chased on foot by the officers who arrived on the scene. Defendant was apprehended by Detective Smith and Officer Peters.

On January 10, 1994, the jury found the defendant guilty on both counts. He received a sentence of twelve to twenty-five years on count one to run concurrently with a sentence of three to five years on count two. Defendant timely appealed to this court, raising the following assignments of error.

Defendant's first assignment of error states:

"The trial court committed prejudicial error by not allowing the jury to review the videotape which was a joint exhibit admitted into evidence."

The videotape in question is a three-to-five-minute tape of portions of the chase. It was admitted as a joint exhibit. The camera was located in a black and white patrol car driven by Patrolman Janusczik. This car was eight or nine blocks away from defendant when Officer Janusczik received a radio call concern-

ing a high speed chase in the Sixth District. The driver, Officer Janusczik, came upon the cars just after the alleged attempt to run over Detective Smith on London Avenue and just as Detectives Hall and Smith are backing up to turn around. The videotape further shows Officer Janusczik become a part of the chase in the second police vehicle. The chase then winds through more streets until the police exit their vehicles and pursue the defendant on foot. The last segment of the videotape shows defendant and Yafanaro being apprehended. Both defendant and Yafanaro are shown on the videotape after the chase is over. Yafanaro is visibly shaken. Defendant is shown being cuffed and placed in the police car. He states that he did not know it was the police chasing him.

The videotape in question is helpful to the trier of fact for various reasons. First, the videotape assists the jury in deciding whether one could be mistaken as to whether the unmarked police car driven by Smith and Hall was in fact a police vehicle. This possibility of confusion was displayed on the videotape when Officer Janusczik, initially thinking that the car driven by Smith and Hall was the suspect's vehicle, but later realizing it was a police vehicle, says, "That's the bad guys. No, that's the coppers." This evidence was relevant to the defense because the defendant claimed he did not realize his pursuers were law enforcement personnel.

Second, the videotape could exhibit potential inconsistencies in the state's witnesses. The patrol car that carried the video camera came upon the scene as defendant's car drives over the railroad tracks, just after defendant allegedly tried to run over Detective Smith. The video is useful to determine the positions of the various officers and their cars at this point of the chase. Concerning the alleged felonious assault, Sergeant Johnson testified as follows: (1) he was thirty or forty feet from the incident, (2) he saw the event clearly, and (3) he was behind Officer Janusczik's car, which contained the video camera. Officer Waid, Sergeant Johnson's partner in the car that night, testified concerning these points as follows: (1) he was one hundred fifty feet from the incident, (2) he had no first-hand knowledge of what happened concerning the felonious assault, and (3) Officer Janusczik was in a better position to observe any activity at the tracks. On the first two points, the videotape is relevant in probing any inconsistency between the testimony of the two officers who sat in the same car, one claiming to see the event clearly and the other claiming to have no first-hand knowledge of the event. Regarding the third point, both officers claim that, although they were at the scene of the alleged felonious assault, the car with Officer Janusczik was in a better position to view the alleged felonious assault. This testimony directly contradicts the videotape, which shows the car with Officer Janusczik arriving *after* the alleged felonious assault.

██ The jury asked to view the videotape during its deliberations. Ohio follows the majority rule that it is common practice to send exhibits admitted into evidence into the jury room.

"The only reported Ohio case on point has followed the majority rule and permitted the replaying of a videotape exhibit during jury deliberations. 'It is common practice to send exhibits admitted into evidence into the jury room. * * * Once in the jury room, the exhibits may be examined by the jury to any extent it desires. * * * We find no prejudicial error in the jury's viewing a second time an exhibit properly admitted into evidence.' *State v. Fellows* (1975), 47 Ohio App.2d 154, 158–159, 1 O.O.3d 249, 252, 352 N.E.2d 631, 635." *State v. Clark* (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844, 851; *Trenton v. White Consol. Industries* (Dec. 17, 1993), Lake App. No. 92–L–058, unreported, 1993 WL 548453.

In Ohio it is within the discretion of the trial court to determine which exhibits should be sent to the jury room. *Clark, supra; C.T. Taylor Co. v. Melcher* (1983), 13 Ohio App.3d 6, 13 OBR 6, 468 N.E.2d 323.

A recent Ohio appellate decision, *State v. Hairston* (Dec. 30, 1994), Franklin App. No. 94APA02–205, unreported, 1994 WL 723316, discussed the question of whether a trial court abuses its discretion in refusing to permit videotapes to go to the jury room for review and deliberations. In *Hairston,* the videotape in question was a store surveillance video. Even though the videotape was a state exhibit, the defense requested that the jury be permitted to view the videotape during its deliberations. The trial court denied the request. When the jury requested to see the videotape, the judge allowed the jury to review the tape only in the courtroom and did not allow them to start or stop the videotape. The defendant appealed the manner in which the jury was allowed to view the tape. The appellate court, after recognizing that there is not an abundance of Ohio law regarding the specific issue of video recordings, looked to sources other than Ohio case law for guidance. The court in *Hairston* quoted a commentator who made the following observations concerning exhibits in the jury room:

" 'Routinely the jury is allowed to take tangible exhibits with it to the jury room, provided only that such exhibits have been received in evidence. * * * In any given case, however, the question whether the jury should have an exhibit during deliberations rests very much in the discretion of the trial judge, who may conclude that an exhibit should be withheld from the jury during deliberations.

" 'Quite sensibly, courts have had some reluctance to permit the jury to take with it documents of a testimonial character, lest they act as a speaking, continuous witness * * * to the exclusion of the totality of the evidence taken at trial which must be viewed in its entirety. This concern applies to transcripts of testimony (whether given at a deposition or at trial), and to charts, reports, or

other displays which highlight or sum up the case or testimony, and are prepared and offered by a party.

" 'But there is no rule of exclusion for tangible exhibits with verbal content. Nontestimonial exhibits with such content, such as * * * recordings of criminal acts which are verbal in nature, are generally allowed to go into the deliberations. Indeed, it would be highly peculiar to withhold such things from the jury's scrutiny, and somewhat inconsistent with the whole philosophy underlying the Best Evidence Rule * * *.' " *Hairston* at 23, quoting Louisell and Mueller, Federal Evidence (1979) 682–684, Section 390.

In other states, whether videotapes may be taken into jury deliberations turns on the distinction of whether the video is testimonial or nontestimonial in nature. *Pfaff v. State* (Okla.Crim.App.1992), 830 P.2d 193, 195. The court in *Hairston* found that the surveillance videotape in question was nontestimonial in nature and could have, in the court's discretion, been viewed solely by the jurors in the jury room. Similarly, in *Skelly Beauty Acad. v. Columbia Gas Of Ohio, Inc.* (Aug. 29, 1991), Cuyahoga App. Nos. 58597, 58598, 58599 and 58600, unreported, this court upheld the trial court's decision to allow the jury to view a videotape in their deliberations. The videotape was a news report of the fire that was the subject of the litigation.

Because of the nature of this film, a single viewing more than likely confused rather than aided the jury in its decision. Multiple viewings with the opportunity to stop and replay sections, along with some explanation from witnesses, are necessary to establish the identity of each car and thus the relative positions of the actors. The camera is in a moving car and there is an overlay of conversation coming from the moving car, all of which needs to be sifted.[1]

The decision as to whether the jury could view the videotape in its deliberations is reviewed under an abuse of discretion standard. *Clark, supra.* A trial court commits an abuse of discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167; *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. Having reviewed the evidence, we find it unreasonable to deny the jury the opportunity to review this videotape, which was a joint exhibit properly admitted into evidence. The general rule is to allow the jury to view exhibits in their deliberations. Where a single, unaided viewing would cause confusion, it would be unreasonable to deny the jury an opportunity to resolve the confusion,

---

1. The trial court gave no reason for its ruling. The trial court's ruling that the videotape would be played only once, resulted, at the least, in unduly limiting the jury as a finder of the facts.

**20**

especially when the jury expressly requests to see the tape and, since it is a joint exhibit, both parties acknowledge its relevance.

A second issue is whether the trial court should have permitted the videotape on cross-examination of the state's witnesses. Generally, the scope of cross-examination and the admissibility of evidence during cross-examination are also matters which rest in the sound discretion of the trial judge. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. The inconsistencies of testimony are too important to deny trial counsel the use of the tape on cross-examination. Furthermore, some assistance in identifying the cars and location of witnesses on the tape is crucial. Such assistance should have been permitted through the testimony of witnesses, along with the opportunity to stop and replay sections, in direct and cross-examination. This assignment of error is well taken.

In view of this court's disposition of defendant's first assignment of error, the second assignment of error [2] concerning the Confrontation Clause is rendered moot. A reviewing court will not review a constitutional question where the case can be disposed of on other tenable grounds. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. Likewise, defendant's third and fourth assignments of error,[3] concerning his right to effective assistance of counsel and weight of the evidence, are also rendered moot. App.R. 12(A)(1)(c).

This cause is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, P.J., concurs.

DYKE, J., concurs in judgment only.

---

**2.** Assignment of Error No. II asserts:
"II. The trial court committed prejudicial error by not allowing the accused to cross exam [*sic*] his accusers utilizing the videotape exhibit and this ruling violated the appellant's Sixth Amendment right to cross-examine the witnesses against him."

**3.** Assignments of Error Nos. III and IV assert:
"III. Appellant's counsel was constitutionally ineffective and his erroneous advice affected the outcome of the trial process, entitling appellant to have his guilty determination thrown out and have his case reheard at a new trial.
"IV. The jury's verdict was not supported by the manifest weight of the evidence and it should be overturned."