[Cite as *State v. Stengel*, 2018-Ohio-2286.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                        |
|--------------------------|---|--------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.       |
|                          | : | Hon. Patricia A. Delaney, J.   |
| Plaintiff-Appellee       | : | Hon. Earle E. Wise, J.         |
|                          | : |                                |
| -vs-                     | : |                                |
|                          | : | Case No. 17-CA-38              |
| EVAN M. STENGEL          | : |                                |
|                          | : |                                |
| Defendant-Appellant      | : | <u>OPINION</u>                 |


CHARACTER OF PROCEEDING:      Criminal appeal from the Fairfield Municipal
                              Court, Case No. TRC 1611830A

JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       June 8, 2018

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

TAMAS TABOR                           THOMAS EWING
Assistant Prosecutor                  60 West Columbus Street
136 West Main Street                  Pickerington, OH 43147
Box 1008
Lancaster, OH 43130

*Gwin, P.J.*

{¶1}    Appellant Evan M. Stengel ["Stengel"] appeals his conviction and sentence after a negotiated plea of no contest in the Fairfield County Municipal Court.

*Facts and Procedural History*

{¶2}    On November 4, 2016, Thomas Bolden, an employee working at Tiki Bowling Lanes, reported a motor vehicle accident to law enforcement.  The accident had occurred outside the bowling alley approximately fifteen minutes prior to Bolden's report.

{¶3}    Officer Eric Spiegel from the Lancaster Police Department arrived and observed a fire hydrant broken off at the base, a damaged street sign pole, and tire tracks leading away from the scene.  Officer Spiegel discovered debris from a vehicle located around the damaged hydrant and around the entrance to a nearby apartment complex. Officer Spiegel collected several pieces of debris, including plastic parts of a vehicle's headlights, side mirrors, and bumper.  Thomas Bolden had informed the 9-1-1 operator that the person who had knocked on the door of the bowling alley to report the accident had advised that the suspect vehicle's last known direction of travel was towards the nearby apartment complex.

{¶4}    Both of the officers were equipped with body cameras; however, Officer Spiegel's camera malfunctioned.  The events were recorded in real time on Officer Howell's camera.  State's Exhibit A.

{¶5}    Officer Spiegel and Officer Jared Howell located a vehicle with heavy front-end damage, a broken headlight, a broken mirror, and a broken bumper, parked outside the apartment complex.  Law enforcement matched the broken edges on some of the parts found at the scene of the accident, with the missing parts on the damaged vehicle

in the parking lot. The officers indicated that the vehicle was still warm to the touch, despite the cold temperature that evening. Officer Spiegel opined that the vehicle must have been driven within the preceding hour to maintain that level of warmth in relation to the air temperature. Law enforcement then ran the license plate on the damaged vehicle and it returned to Stengel whose listed address was 1526 Courtship Drive, one of the apartments in front of the parked vehicle. Given the heavy damage to the vehicle, law enforcement was concerned about the driver's well-being and attempted to contact Stengel at his nearby address.

{¶6} The officers went to the apartment knocked and announced their presence for approximately ten minutes. There were two entrances to the apartment where Stengel resided; a front door and a rear sliding glass door. Officer Spiegel approached the front door while Officer Howell took up a position at the rear of the apartment to make sure that no one escaped from the back door.

{¶7} While knocking, the officers heard the sound of a firearm being loaded coming from the open window of an upstairs bedroom. Per their training, the officers drew their firearms, held them at "low ready," i.e. not pointed at any person, but out, and ready to be brought up if necessary. Officer Spiegel was able to make verbal and visual contact with a female through an upstairs window and identified himself as a police officer. In response to Officer Spiegel's request, the female came downstairs and opened the front door. An adult male accompanied her.

{¶8} The female identified herself as Chrisha Stengel, Stengel's sister, and the male, was Ms. Stengel's fiancé Christopher Meyer. Both individuals came to the front

door and spoke with officers.  At some point during the discussion, the officers holstered their weapons.

{¶9}     Christopher explained to Spiegel that he had loaded his rifle because he thought someone was trying to break into the apartment.  The following exchange then occurred:

OFFICER SPIEGEL: I was knocking profusely.  I need to talk to Evan.

MS. STENGEL: Okay.

OFFICER SPIEGEL: And I need to know that he's not coming down with a gun.

MS. STENGEL: Oh, no, he doesn't own a gun.

OFFICER SPIEGEL: It doesn't matter, there is a gun in the house.

MS. STENGEL: Okay.

OFFICER SPIEGEL: Which you said so and it's loaded.  I need for him to come down (inaudible) without any weapon.  Okay?

MS. STENGEL: I tried to wake him up.  He's not waking up.

OFFICER SPIEGEL: Is he your roommate?

MS. STENGEL: No, he's my brother.  My little brother.

OFFICER SPIEGEL: Your little brother wrecked his car tonight.  (Inaudible) car.  Okay.  And we're here to try to make contact with him.  And when we hear a weapon being loaded, we get a little nervous.

MS. STENGEL: Yes.

OFFICER SPIEGEL: And so I need your permission to go inside to make contact with Evan.

MS. STENGEL: Yes.  Can we put the little dog up?

T. Motion to Suppress, May 17, 2017 at 39-40.

{¶10}  Officers entered the home, followed Mr. Meyer up the stairs, and watched him secure the firearm, which he had previously loaded.  Mr. Meyer then directed officers to Stengel's room.  It is unclear whether the bedroom door was open, closed, or ajar when law enforcement reached it.  Law enforcement entered Stengel's room to check on him.

{¶11}  Both officers entered the bedroom and found Stengel asleep.  The lights were off, so the officers illuminated the bedroom with their flashlights.  The officers roused Stengel and asked him if he was injured in the crash, and ensured he was unarmed.  After ensuring Stengel was not in need of medical attention and that he did not have any passengers with him when he crashed, Officer Spiegel advised Stengel of his *Miranda* warnings.  Stengel was advised of his *Miranda* rights by Officer Spiegel who stated, "All right.  I'm going to read you something just so I can say I did."  T. Motion to Suppress, May 17, 2017 at 52.  After advising Stengel of his right to remain silent and the fact that anything he said would be used against him in a court of law, Officer Spiegel asked Stengel if he understood.  Stengel replied, "Some of it."  Officer Spiegel proceeded to advise Stengel of his additional *Miranda* rights.  After Officer Spiegel completed the advisement of *Miranda* rights, he asked, "Would you talk to us about the accident?"

{¶12}  Stengel then proceeded to answer questions from Officer Spiegel and made a number of incriminating statements regarding his involvement in the accident and the consumption of alcoholic beverages.  Stengel was eventually taken outside the apartment where Officer Howell conducted standardized field sobriety tests.  Howell observed four

clues on the horizontal gaze nystagmus test and stated that Stengel did not do well on the walk-and-turn and one-leg-stand tests.

{¶13} After completion of the field sobriety tests, Stengel was arrested for operating a motor vehicle while impaired in violation of R.C. 4511.19(A)(1)(a); operating a motor vehicle while having a prohibited concentration of alcohol in violation of R.C. 4511.19(A)(1)(h); leaving the scene of an accident in violation of Licking County Ordinance 335.14; and failure to control a motor vehicle in violation of Licking County Ordinance 331.34.OVI. Stengel was transported to the police station where he submitted to a breath-alcohol test. The result from the breath-alcohol test was 0.171 grams of alcohol per 210 liters of breath.

{¶14} On August 10, 2017 Stengel pled no contest to one count of "under the influence" a violation of R.C. 4511.19(A)(1)(a) and the state dismissed the balance of the charges.

*Assignments of Error*

{¶15} Stengel raises four assignments of error,

{¶16} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE WARRANTLESS HOME ENTRY BY POLICE OFFICERS WAS UNREASONABLE UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶17} "II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S STATEMENTS TO THE POLICE BECAUSE HIS STATEMENTS WERE OBTAINED WITHOUT A VALID MIRANDA WAIVER IN VIOLATION OF THE PRIVILEGE

AGAINST COMPELLED SELF-INCRIMINATION GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶18}** "III. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S STATEMENTS TO THE POLICE BECAUSE HIS STATEMENTS WERE INVOLUNTARY AND OBTAINED IN VIOLATION OF THE RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶19}** "IV. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE RESULTS OF APPELLANT'S BREATH-ALCOHOL TEST BECAUSE THE STATE FAILED TO DEMONSTRATE COMPLIANCE WITH THE THREE-HOUR TIME LIMITATION IMPOSED BY R.C. 4511.19(D).

I.

**{¶20}** In his first assignment of error, Stengel contends that the trial court erred in not granting his motion to suppress because the warrantless entry into the apartment and the warrantless entry into his bedroom were unreasonable.

**STANDARD OF APPELLATE REVIEW – MOTION TO SUPRESS.**

**{¶21}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988;

*State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### STANDARD OF APPELLATE REVIEW – CONSENT TO SEARCH.

**{¶22}** Stengel argues that Chrisha Stengel did not believe that she could refuse the officers entry into her apartment and thus her consent was not voluntary.

**{¶23}** A warrantless search based upon a suspect's consent is valid if his consent is voluntarily given, and not the result of duress or coercion, either express or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 862 (1973); and *State v. Danby*, 11 Ohio App.3d 38, 463 N.E.2d 47 (6th Dist. 1983). The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854*.* The burden of proving that the suspect voluntarily consented to the search rests upon the

prosecution.  *Danby,* 11 Ohio App.3d at 50, 463 N.E.2d 47*; Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); State *v. Hassey*, 9 Ohio App.3d 231, 236 459 N.E.2d 573 (10th Dist. 1983); and *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 491 N.E.2d 1129 (1986).

**{¶24}** No Fourth Amendment violation occurs when an individual voluntarily consents to a search.  See *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990).  In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal.  412 U.S. at 227-228, 93 S.Ct. 2041, 36 L.Ed.2d 854.  See, *State v. Fry*, 4th Dist. No. 03CA26, 2004-Ohio-5747 at ¶18.  The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758 (1984); *Drayton*, supra, 536 U.S. at 205, 122 S.Ct. at 2113.  Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege."  *Schneckloth v. Bustamonte,* 412 U.S. at 235, 93 S.Ct. 2041, 2052 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938)); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist. Stark

No. 2002CA00048, 2002-Ohio-5300, ¶8.  Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary.  Id.  Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search."  *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997).  The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly against the manifest weight of the evidence[1].

ISSUE FOR APPEAL

A. Whether the trial court, in finding Chrisha Stengel's consent to enter was voluntarily given, clearly lost his way and created such a manifest miscarriage of justice that his decision overruling Stengel's motion to suppress must be reversed.

**{¶25}**  In the case at bar, the entire encounter with Chrisha Stengel was recorded on Officer Howell's body camera.  State's Exhibit A.

**{¶26}**  Officer Stengel explained to Ms. Stengel that her brother had been involved in an automobile accident.  Ms. Stengel informed the officers that she had been unable to wake her brother.  Officer Spiegel asked for Ms. Stengel's permission to enter her home.  When asked by Officer Spiegel to come in to check on her brother Ms. Stengel said, "Yes."

**{¶27}**  The officers also asked Mr. Meyer to secure his gun.  When asked what he should do with it, the officers told him to lock it up.  Meyer gave the officers permission to enter and accompany him while he secured the weapon.  State's Exhibit A.

---

[1] *See*, *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶21 finding that under Ohio law the "clearly erroneous" standard of review is nothing more than the manifest weight of the evidence standard.

**{¶28}**  The officers were polite and made small talk about the couple's two dogs when entering the residence.  The officer indicated that their primary concern was to make sure Stengel was all right.

**{¶29}**  In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress.  Id. at 366, 582 N.E.2d at 981-982.  The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials.  *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584(1982).

**{¶30}**  A review of the body camera footage supports the conclusion that Ms. Stengel's consent was voluntary and not the result of duress or coercion, either express or implied.  Accordingly, competent, credible evidence exists to support the trial court's findings.

**STANDARD OF APPELLATE REVIEW – COMMUNITY- CARETAKING EXCEPTION TO THE FOURTH AMENDMENT**

**{¶31}**  Stengel next argues that the officers' warrantless entry into his bedroom was unreasonable.

**{¶32}**  "The need to protect or preserve life or avoid  serious  injury  is  justification for  what  would  be  otherwise  illegal  absent  an  exigency  or emergency." *Brigham City v. Stuart, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting Mincey v.  Arizona*, 437 U.S.  385, 392, 98 S.Ct.  2408, 57 L.Ed.2d 209 (1978).  *Accord, State v. Dunn*, 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, syllabus.

**{¶33}**  In Ohio, the Supreme Court has held,

The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.

*State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus. In *Dunn*, the Ohio Supreme Court cited ABA Standards for Criminal Justice § 1–2.2 for the proposition that "police officers are duty-bound to provide emergency services to those who are in danger of physical harm." *Dunn*, ¶20. Accordingly, in the case at bar, the officers' actions must be examined in light of what actions were objectively reasonable for a law enforcement officer in the role of a community caretaker to take under the circumstances. *Brigham City v. Stuart*, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

ISSUE FOR APPEAL

B. Whether the officers had objectively reasonable grounds to believe that Stengel was in immediate need for his or her assistance to protect life or prevent serious injury.

{¶34} In the case at bar, the officers were investigating a serious automobile accident. Chrisha Stengel told the officers that she was unable to wake her brother. Further, the officers were given permission to enter the residence to check on Stengel. The officers had knocked at the door to the residence for nearly 10 minutes. The evidence establishes that the officers knocked loud enough and long enough to rouse two of the apartment's occupants who had been asleep. The couple's two dogs can be heard barking throughout the time the officers entered the residence and approached Stengel's

room.  Stengel did not respond when the officers call out to him.  Stengel was not aroused by the noise.

{¶35}  The Supreme Court in *Michigan v. Fisher*, 588 U.S. 45, 130 S.Ct. 546, 175 L.Ed.2d 410, held, "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception. * * * [T]he test * * * [is] whether there was 'an objectively reasonable basis for believing' that medical attention was needed * * *." *Fisher,* 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410.  Thus, in order for police to invoke the exception, they need have only a reasonable basis to believe the occupant is in need of medical attention.

{¶36}  Under the circumstances of the case at bar, we find the evidence supports the conclusion that the officers had objectively reasonable grounds to believe that Stengel was in immediate need for his or her assistance to protect life or prevent serious injury.  Accordingly, competent, credible evidence exists to support the trial court's findings.

C. Conclusion.

{¶37}  Stengel's First Assignment of Error is overruled.

II. & III.

{¶38}  In his Second Assignment of Error, Stengel acknowledges that Officer Spiegel read him his *Miranda* rights shortly after the officers entered his bedroom and awaked him and that he orally waived each right.  However, Stengel asserts that under the totality of the circumstances there was not a knowing and intelligent waiver of *Miranda*, but merely an acquiescence to the officers' show of authority, intimidation, and coercion.

{¶39}  In his Third Assignment of Error, Stengel contends the trial court erred in failing to suppress his statements to the police because his statements were involuntary.

**STANDARD OF APPELLATE REVIEW - *MIRANDA V. ARIZONA.***

**{¶40}** The Fifth Amendment to the United States Constitution guarantees that "'[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.'" (*Ellipses sic.*) *Miranda v. Arizona,* 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Accord, State v. Barker,* 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d365, ¶21. The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can " 'undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely.'" (*Ellipsis sic.*) *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), *quoting Miranda* at 467, 86 S.Ct. 1602; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

**{¶41}** In *State v. Wesson,* the Ohio Supreme Court set forth the following test,

When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive Miranda warnings to protect against compelled self-incrimination. *Miranda* at 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694. A suspect may then knowingly and intelligently waive these rights and agree to make a statement. Id. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. See id. at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Colorado v. Connelly,* 479 U.S. 157, 168–169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus; *see also Arizona v. Fulminante,* 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We have held that a waiver is not involuntary unless there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep. *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989).

137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶34-35.

<u>ISSUE FOR APPEAL</u>

<u>A. Whether the trial judge, in finding Stengel's statements were voluntarily given, clearly lost his way and created such a manifest miscarriage of justice that his decision overruling Stengel's motion to suppress must be reversed.</u>

{¶42} In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the court held that "police over-reaching" is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854(1988). In *State v. Belton*, the Ohio Supreme Court further defined "coercion,"

This court may find coercion when law-enforcement officers "persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing his rights and responding to questions." *Edwards*, 49 Ohio St.2d at 39, 358 N.E.2d 1051. However, "the presence of promises does not as a matter of law, render a confession involuntary." Id. at 41, 358 N.E.2d 1051. Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant. Id. And "[a]dmonitions to tell the truth are considered to be neither threats nor promises." *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994); *see also State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 29. Finally, it is not unduly coercive for a law-enforcement officer to mention potential punishments. *See State v. Western*, 2015-Ohio-627, 29 N.E.3d 245, ¶ 38 (2d Dist.); *compare State v. Robinson*, 9th Dist. Summit No. 16766, 1995 WL 9424, *4 ("While a correct statement of the law may not render a confession involuntary, a misstatement of the law may cause such a confession to be involuntary").

149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶111.

**{¶43}** In the cause *sub judice,* Stengel does not assert that he was physically deprived or mistreated while at the interview, nor does the record reveal any type of physical deprivation. Moreover, there is no evidence that police subjected Stengel to threats or physical abuse, or deprived him of food, sleep, or medical treatment. See *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908(1989).

**{¶44}** In the case at bar, the interview took place in Stengel's bedroom. His sister and her fiancé were present in the home and aware the police were questioning Stengel. The body camera footage shows that Officer Spiegel expressed his concerns concerning Spiegel's well-being and told Spiegel he was investigating the accident involving Stengel's car. The officers did not have their guns drawn; nor did they speak in commanding tones. The officers were professional and courteous at all times.

**{¶45}** This record does not support his allegation of police coercion, show of authority or intimidation. Under the circumstances of the case at bar, we find the evidence supports the conclusion that Stengel knowingly, intelligently and voluntary waived his *Miranda* rights and his statements to the police were voluntarily given. Accordingly, competent, credible evidence exists to support the trial court's findings.

B. Conclusion.

**{¶46}** Stengel's Second and Third assignments of Error are overruled.

IV.

**{¶47}** In his fourth assignment of error, Stengel argues the trial court erred in failing to suppress the results of his breath-alcohol test because the state failed to demonstrate compliance with the three-hour time limitation imposed by R.C. 4511.19(D).

**STANDARD OF APPELLATE REVIEW – MOTION TO SUPRESS.**

**{¶48}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988;

*State v. Fanning*, one Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

<u>ISSUE FOR APPEAL</u>

<u>A. Whether the trial court, in finding Stengel's breath test was taken within three hours of the violation, clearly lost his way and created such a manifest miscarriage of justice that his decision overruling Stengel's motion to suppress must be reversed.</u>

**{¶49}** In the case at bar, Stengel was originally charged with OVI as both a violation of R.C. 4511.19(A)(1)(a) ["under the influence"] and R.C. 4511.19(A)(1)(h) ["per se].

**{¶50}** In the case at bar, "we first noted that in 1983, the General Assembly had amended R.C. 4511.19 to make 'it illegal to operate a vehicle not only while under the influence of alcohol, but also with a proscribed level of alcohol content in one's blood,

breath, or urine.' *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130 (1988). The effect of the General Assembly's amendment was to divide R.C. 4511.19 into two classification of offenses: the offense of operating a vehicle while under the influence, and the "per se" offense." *State v. Hassler,* 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶10 [footnote omitted].

{¶51} Per se offenses make the blood-alcohol content an element of the offense. The trier of fact must find only "that the defendant operated a vehicle * * * and that the defendant's chemical test reading was at the proscribed level." *Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). In contrast, for "driving under the influence" in violation of R.C. 4511. (A)(1)(a)*,*

> The amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed.1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue... The test results, if probative, are merely considered in addition to all other evidence of impaired driving in a prosecution for this offense.

*Lucas*, 40 Ohio St.3d at 104, 532 N.E.2d 130.

{¶52} The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions,

conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Toledo v. Starks* (1971), 25 Ohio App .2d 162, 166. *See, also, State v. Steele* (1952), 95 Ohio App. 107, 111 ("[B]eing 'under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). *See, State v. Henderson*, 5th Dist. No.2004-CA-00215, 2005-Ohio-1644 at ¶ 32. [*Citing State v. Barrett* (Feb. 26, 2001), Licking App. No. 00CA 47].

{¶53} As Stengel was not convicted of a per se violation, exclusion of the BAC test results would not have mandated an acquittal.

{¶54} In any event, the breath test in this case occurred at 1:47 A.M. on November 4, 2016. T. Motion to Suppress, May 17, 2017 at 172. Accordingly, so long as the state presented sufficient evidence that Stengel operated his motor vehicle any time after 10:47 P.M. the previous night, his breath test result is admissible.

{¶55} Thomas Bolden, a maintenance worker at Tiki Bowling lanes called 9-1-1 at 12:48 A.M. and reported the crash to law enforcement. Mr. Bolden advised law enforcement that the accident had occurred approximately fifteen minutes earlier. States Exhibit 8. Fifteen minutes prior to the 9-1-1 call would have been just after 12:30 A.M., approximately one hour and fifteen minutes before Stengel's breath test. Judicial officials at suppression hearings may rely on hearsay and other evidence to determine whether

alcohol test results were obtained in compliance with methods approved by the Director of Health, even though that evidence may not be admissible at trial. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, paragraph 2 of the syllabus. [Citing Evid.R. 101(C) (1)].

**{¶56}** Officers were able to observe that Stengel's vehicle was still warm to the touch, despite the cold temperatures that night. T. Motion to Suppress, May 17, 2017 at 25; 95. Stengel later made statements to law enforcement that he had only driven a distance of less than a mile, which, given the warmth of Stengel's vehicle, strengthened law enforcement's belief that Stengel had operated his vehicle very recently. T. Motion to Suppress, May 17, 2017 at 95.

**{¶57}** The record contains competent, credible evidence that the test was conducted in accordance with statutory requirements and the results were therefore admissible.

B. Conclusion.

**{¶58}** Stengel's Fourth Assignment of Error is overruled.

{¶59}  The judgment of the Fairfield County Municipal Court is affirmed.


By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur