[Cite as *State v. Moctezuma*, 2021-Ohio-442.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 20 CAA 02 0008 |
| AARON M. MOCTEZUMA | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  CR I 10 06 0616


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      February 17, 2021


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

MELISSA A. SCHIFFEL                    SARAH C. LARCADE
PROSECUTING ATTORNEY                   McKINNEY & NAMEI CO., LPA
CHRISTOPHER E. BALLARD                 15 East Eighth Street
ASSISTANT PROSECUTOR                   Cincinnati, Ohio  45202
145 North Union Street, 3rd Floor
Delaware, Ohio  43015

*Wise, John, J.*

{¶1}   Appellant Aaron Moctezuma appeals his conviction from the Delaware County Common Pleas Court after entering an *Alford* plea of guilty to one count of Receiving Stolen Property in violation of R.C. 2913.51(A).

## FACTS AND PROCEDURAL HISTORY

{¶2}   On September 22, 2017, Appellant, a native and citizen of Mexico, was employed as a waiter at a restaurant, El Vaquero. That evening, he waited on Rebecca Shonebarger. Shonebarger paid for the meal using her credit card.  Appellant took Shonebarger's credit card and used it to make purchases at Best Buy, Carters, and Von Maur.

{¶3}   On September 28, 2017, Detective Rex Waldenmyer arrested Appellant and interviewed him.

{¶4}   On October 27, 2017, Appellant was indicted on one count of Identity Fraud, two counts of Theft, and two counts of Receiving Stolen Property.

{¶5}   On April 6, 2018, Appellant entered a guilty plea to one count of Theft.

{¶6}   On May 15, 2018, the trial court sentenced Appellant to fifteen days in jail followed by three years of community control.

{¶7}   On April 15, 2019, Appellant filed a Motion to Re-Open and Vacate Plea. The trial court granted the motion on May 15, 2019.

{¶8}   On July 25, 2019, Appellant filed a Motion to Suppress his statements made to police.

{¶9}   A suppression hearing was held on October 23, 2019. During the hearing, Waldenmyer testified that he advised Appellant of his *Miranda* warnings in English and

provided written copies of his *Miranda* warnings in English and Spanish, which Appellant reviewed and signed. The English version indicated Appellant had a high school education. The Spanish version had been printed off languageconnections.com by another officer. Waldenmyer testified that he believed Appellant was able to understand the detective, but provided the *Miranda* warnings in Spanish since he knew Appellant was "from Mexico" and wanted to ensure Appellant understood.

**{¶10}** During the interview, Appellant confirmed he worked at El Vaquero as a server, and that he rung up Shonebarger's credit card. Appellant admitted to making purchases on the credit card at Best Buy, Von Maur, and Carters, but claimed he found the credit card on the ground. Appellant told Waldenmyer the items he bought were at the apartment of the friend he was staying with. When Waldenmyer asked Appellant if he had any questions, Appellant responded, "No, I'm good. Like, you say when you were asking something, the lawyer, he need to be here so I don't – I don't even see my lawyer." Supp. Hrg. Tr. 28. At this point Waldenmyer terminated the interview and did not ask Appellant any further questions. Appellant had not indicated up to that point that he wanted to speak with an attorney. Waldenmyer expressed at certain points he did have some trouble understanding Appellant, but for the most part he could understand Appellant. Waldenmyer also testified that he believed Appellant understood him.

**{¶11}** After the interview, Appellant went to the apartment with officers and produced the items he had purchased. Appellant did not testify at the hearing and presented no witnesses or exhibits.

**{¶12}** On October 30, 2019, the trial court denied the motion, finding that Appellant appeared to understand most, if not all, of the questions asked by the detective. The trial

court also noted Appellant said he found the credit card on the ground, described what he bought and where, and specified an address where he was staying with a friend. At several points during the interview Appellant responded nonverbally by nodding or shaking his head. The trial court concluded that the evidence indicated Appellant understood English and was able to have a conversation in English, and that the evidence demonstrated he understood his rights and acknowledged them several times. The trial court made specific mention that he acknowledged his *Miranda* rights by signing both the English and Spanish forms. The trial court found, based on the totality of the circumstances, Appellant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights.

{¶13} On January 22, 2020, Appellant entered an *Alford* plea to one count of Receiving Stolen Property.

{¶14} On January 27, 2020, the trial court sentenced Appellant to fifteen days in jail, with credit for time served, and eighteen months of community control.

## ASSIGNMENT OF ERROR

{¶15} On February 26, 2020, Appellant filed a notice of appeal raising the following Assignment of Error:

{¶16} I. "THE TRIAL COURT ERRED BY DENYING MR. MOCTEZUMA'S MOTION TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS."

**I.**

**{¶17}** Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress because Appellant did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, that the State failed to meet its heavy burden of proving Appellant made a knowing, intelligent and voluntary waiver of his *Miranda* rights, and the trial court failed to apply the correct standard and burden of proof in deciding Appellant's Motion to Suppress Statements. We disagree.

**{¶18}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id*. The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id*. "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. That is, the appellate court will review the application of the legal standard to the facts *de novo*. *Id*.

**{¶19}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. *State v. Goins*, 5th Dist. Morgan No. 05-8, 2006-Ohio-74, ¶10. First, an appellant may challenge the trial court's finding of fact. *Id*. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. *Id*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *Id*. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's

conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8ᵗʰ Dist. 1994).

**{¶20}** The Fifth Amendment to the United State Constitution guarantees no person in a criminal case shall be compelled to be a witness against himself, and the Sixth Amendment to the United States Constitution guarantees the accused shall have the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The inherently coercive nature of custodial interrogation heightens the risk a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can "undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely." *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), quoting *Miranda* at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

**{¶21}** In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Dickerson* at 435. *Miranda* held the State may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. In *Miranda*, the Supreme Court recognized the importance of

a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them *Id.* at 469.

**{¶22}** If custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the State must demonstrate by a preponderance of the evidence that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. *Miranda,* 384 U.S. at 475. A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact the suspect eventually confessed. *Id.* Rather, the record must show the accused was offered counsel but intelligently and understandingly rejected the offer. *Id.* If the state does not satisfy its burden, "no evidence obtained as a result of interrogation can be used." *Id.* at 479.

### A.　Appellant did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, and the State failed to meet its burden of proof.

**{¶23}** In his first issue presented, Appellant argues that he did not make a knowing, intelligent, and voluntary waiver of his *Miranda* rights.

**{¶24}** To determine whether a suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights, courts examine a totality of the circumstances surrounding the waiver. *State v. Clark,* 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). The totality of the circumstances analysis is triggered by evidence of police coercion. *Id.* "[T]his approach requires us to inquire into all the circumstances surrounding the interrogation. This includes age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus, reversed on other

grounds, (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. In addition, a signed written waiver of rights is strong proof that such waiver was valid. *Clark* at 261.

**{¶25}** In the case *sub judice*, the trial court found Appellant was able to understand and speak English sufficiently to understand and waive his *Miranda* rights when speaking with Waldenmyer. Appellant was able to respond to Waldenmyer's questions, stating he found the credit card on the ground, bought items at various stores using the credit card, and told Waldenmyer where he was staying. Waldenmyer read Appellant's *Miranda* rights in English, and provided a written copy of the *Miranda* rights in both English and Spanish. In addition, Appellant acknowledged he understood his *Miranda* rights by signing both the English and Spanish versions.

**{¶26}** Based upon the totality of the circumstances we conclude the State met its burden in establishing that Appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights.

### B. The trial court failed to apply the correct standard and burden of proof in deciding Appellant's Motion to Suppress Statements.

**{¶27}** Again, appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id.* In reviewing a trial court's findings of fact, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). We are required to accept the trial court's findings of fact if they are supported

by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist. 1996). "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶8. That is, the appellate court will review the application of the legal standard and totality of the circumstances to the facts *de novo*. *Burnside* at ¶8, *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶35.

{¶28} When reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380.

{¶29} Appellant argues the trial court clearly lost its way as their denial of Appellant's motion to suppress based on the total weight of the evidence was a manifest miscarriage of justice, and the trial court did not apply the correct standard.

{¶30} The trial court noted at the suppression hearing, "[t]he Court, is – looking at whether or not the consent is knowingly, voluntarily, and intelligently waived, whether those rights are waived looking at the totality of the circumstances." Tr. at 51. The trial court found Appellant was able to understand and speak English sufficiently enough to understand and waive his *Miranda* rights. During the suppression hearing, the State produced evidence that Waldenmyer both read and provided a written copy of the *Miranda* rights to Appellant, a recording of the subsequent interview showing Appellant answered Waldenmyer's questions in English, that Appellant initially denied stealing the

credit card, and maintained a large amount of cash he had on him was of legitimate origins.

{¶31}  Our review of the entire record shows the court did use the correct totality of the circumstances analysis, and fails to persuade us that the trial court lost its way and created a manifest miscarriage of justice. The trial court did not deny the motion to suppress against the manifest weight of the evidence.

{¶32}  Appellant's First Assignment of Error is overruled.

By: Wise, John, J.

Gwin, P. J., and

Wise, Earle, J., concur.


JWW/br 0205